BEN FRANKLIN FINANCIAL CORPORATION, as Successor to Uptown Federal Savings, F.A., successor by merger to Ben Franklin Savings and Loan Association, Plaintiff-Appellee, v. TERRY A. DAVIS *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—89—3061, 1—90—0095 cons.

Opinion filed March 4, 1992.

Ronald J. Broida and David G. Pribyl, both of Summit, for appellants.

Lewis, Overbeck & Furman, of Chicago (Paul V. Esposito and Douglas A. Lindsay, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff Ben Franklin Financial Corporation brought this action to recover the unpaid principal, interest and attorney fees as the result of the default on a promissory note executed by defendants Terry A. and Valerie Davis (Davis). Defendant Chicago Title & Trust Company is trustee under trust No. 59130 of collateral secured under the note, but is not a party to this appeal. The trial court granted plaintiff's motion for summary judgment on count I of a multicount second amended complaint and entered judgment in favor of plaintiff and against Davis in the amount of $1,650,000, which included $1,500,000 on the principal of the note and $150,000 pursuant to the provisions of the note in the event of default. The trial court also awarded plaintiff prejudgment interest in the amount of $388,586. On appeal, Davis contends that the trial court erred when it (1) granted plaintiff's motion for summary judgment when genuine issues of material fact existed as to the propriety of the acceleration of the promissory note; and (2) awarded prejudgment interest for the period be-

tween September 6, 1989, and October 10, 1989. We affirm in part, vacate in part and remand.

On January 9, 1984, Davis executed and delivered a promissory note to Ben Franklin Savings and Loan Association in the principal sum of $1,500,000 plus interest at a rate of 15% annually. Under the terms of the note, Davis was required to make monthly interest installment payments of $18,750 commencing on February 1, 1984, through January 1, 1989. The note was secured by a security agreement which was incorporated by reference into the note. The agreement required that Davis deposit $200,000 into an impound account to guarantee the payment of interest on the note. In the event of a default on the note or agreement, Davis would be required to pay "an additional interest sum" of $150,000.

The agreement provided that any failure to perform under the note constituted a default, and that in the event of default, plaintiff could elect to have the principal sum and interest "become at once due and payable, at the place aforesaid, without presentment, demand or notice." Finally, the agreement provided that modification of the agreement could be made only by express written amendment signed by all the parties.

Davis failed to pay the monthly interest installments due for several months, and by September 1987, Davis owed $56,250 in unpaid interest. On December 15, 1987, Davis was in default for missing the December 1987 interest payment. On January 5, 1988, plaintiff demanded from Davis full payment of the note and the additional interest sum of $150,000. On January 8, 1988, Davis paid the December 1987 interest payment and plaintiff withdrew its demand. This was the last payment made by Davis on the note.

The interest payment for January 1988 remained unpaid, and on January 12, 1988, plaintiff informed Davis that he was again in default. Davis took no action to cure the default, and on January 20, 1988, plaintiff demanded full payment of the note and the additional interest sum of $150,000. On February 3, 1988, plaintiff filed suit against Davis.

On September 6, 1989, the trial court granted plaintiff's motion for summary judgment on count I of the second amended complaint, and entered judgment in favor of plaintiff and against Davis in the amount of $1,650,000. The summary judgment order granted plaintiff leave to file a petition for attorney fees and prejudgment interest, and provided that the summary judgment order was neither enforceable nor appealable until plaintiff's petition for attorney fees and prejudgment interest was ruled upon.

On September 25, 1989, plaintiff filed its petition for prejudgment interest, attorney fees, and entry of final judgment on count I of the second amended complaint. Supported by affidavits, plaintiff's petition sought $377,336 in prejudgment interest through September 25, 1989, plus $750 per day thereafter until final judgment was entered. On October 10, 1989, the trial court entered an order stating that there was no just reason to delay enforcement or appeal of the order entered on September 6, 1989. (134 Ill. 2d R. 304(a).) On October 11, 1989, Davis filed a motion to reconsider the October 10, 1989, order.

On December 11, 1989, the trial court ruled on all pending motions. The trial court awarded plaintiff prejudgment interest in the amount of $388,586. The trial court also awarded $19,666 for attorney fees and costs of $3,438, and denied Davis' motion to reconsider.

Davis first argues that a genuine issue of material fact exists as to whether plaintiff exercised good faith when it demanded payment of the note. Davis relies upon section 1—208 of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 1—208). Section 1—208 states:

> "Option to Accelerate at Will. A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have the power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised." Ill. Rev. Stat. 1987, ch. 26, par. 1—208.

■ It is readily apparent that section 1—208 applies to cases involving an option to accelerate at will or a clause commonly known as an insecurity clause. An insecurity clause is a clause often inserted in security agreements and promissory notes which provides that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral when he deems himself insecure.

■ In the present case, the demand for full payment of the note was not made pursuant to an option to accelerate at will or an insecurity clause, but rather took place pursuant to a default clause contained within the note which states:

> "IF DEFAULT SHALL OCCUR in the payment of principal or interest called for herein, *** it is agreed that at the election of Lender, the principal sum remaining unpaid hereon, together

with interest thereon, shall become at once due and payable, at the place aforesaid, without presentment, demand or notice."

Since the plaintiff did not accelerate the note pursuant to an option to accelerate at will or an insecurity clause, section 1—208 is not applicable to the present case. Moreover, the record in this case establishes as a matter of law that plaintiff's demand for full payment of the note after the default was not the result of lack of good faith by plaintiff. (See *Watseka First National Bank v. Ruda* (1990), 135 Ill. 2d 140, 552 N.E.2d 775.) Davis was late in making interest payments for much of the last quarter of 1987. Davis was in default in December 1987 for not making the December 1987 interest payment, but then cured the default. Davis was late in making the required interest payment for January 1988. Davis was informed by plaintiff that if he did not immediately make the January 1988 interest payment, he would again be deemed in default on the note and that all remedies available to plaintiff would be exercised. Davis never made the January 1988 interest payment. Under the circumstances, it is plain that plaintiff acted completely within its rights when it accelerated the note and that the note was not accelerated by a lack of good faith on the part of plaintiff.

■ Davis next argues that a genuine issue of material fact exists as to whether the monies deposited in the impound account should have been applied by plaintiff in January 1988 rather than in June 1988. The agreement expressly defines the requirements, obligations and rights of the parties under the impound account, which was established to guarantee payment of the principal and interest on the note. The agreement contains the following provision:

"5. *IMPOUNDS.* The debtor will establish concurrently herewith and will maintain a hypothecated savings account with [Ben Franklin]. Said account shall have an initial balance of $200,000.00 and shall guarantee payment of interest on the Note secured hereby and guarantee payment of principal and interest on the existing [FHA mortgage on Edgewater Walk Apartments]. Interest shall accrue on said account to the benefit of [Davis]. [Davis] may withdraw funds from said account to make payments on the Note secured hereby; provided however that the balance in the account shall be maintained at a level [of $100,000] *** [Ben Franklin] shall have the right to automatically and directly deduct and credit from the account the amount of interest payments due and owing *** if not paid when due."

On January 20, 1988, Davis was in default due to his failure to pay the January interest payment due on the note. On that date, approximately $107,000 remained in the impound account. Plaintiff, however, did not apply funds from the account to satisfy the arrearage until June 1988, when it withdrew and applied $84,750 from the account to the accrued interest payments owed by Davis. In September 1988, plaintiff withdrew and applied the remaining $22,573 to the outstanding interest payments owed.

While plaintiff had the right to withdraw funds from the impound account, it did not have an obligation or duty to apply funds from the impound account at any specific time or under any specific set of circumstances. We, therefore, conclude that there being no duty or obligation for plaintiff to immediately apply funds from the impound account to satisfy any interest payment owed, and because plaintiff was acting completely within its rights under the note, there is no material question of fact as to plaintiff's application of funds from the impound account.

■ Davis next contends that a genuine issue of material fact exists as to the date that the note was accelerated. Davis argues that an inconsistency between different paragraphs in count I of the second amended complaint creates an issue of material fact as to the date of acceleration.

Paragraph 9 of count I of the second amended complaint states:
> "9. That the Note was accelerated on January 20, 1988, and pursuant to the terms thereof, at the election of Plaintiff, interest accrues upon the unpaid principal balance at the rate of 18% per annum from the date of acceleration."

Paragraph 11 of count I of the second amended complaint states:
> "11. Plaintiff has and by the filing of this suit (February 3, 1988) does declare the entire amount of indebtedness immediately due and payable pursuant to the terms of the Promissory Note."

While an ambiguity may exist between paragraphs 9 and 11 of the second amended complaint, all other facts alleged and presented, including plaintiff's uncontradicted affidavit, can lead to no conclusion other than that demand for full payment of the note and interest as a result of the default was made on January 20, 1988.

■ Davis next contends that "the attorneys' fees capitalized to the principal of the promissory note was not reasonable." It is Davis' position that the trial court included the attorney fees when it computed the amount of prejudgment interest, and thereby capitalized the attorney fees to the principal sum of the note. It is clear, however,

that the trial court did not include the attorney fees when it computed the amount of prejudgment interest. Thus, Davis' contention is not supported by the record.

■ Davis next contends that a genuine issue of material fact exists as to whether the note was orally modified. In the first instance, this contention is without merit because the agreement provides that any alteration, modification or amendment to the agreement must be made in writing by consent of the parties. Moreover, Davis has not referred to any specific oral statements by the parties which evinces an intent by the parties to modify the agreement. We, therefore, conclude that no genuine issue of material fact exists with regard to modification of the agreement.

■ Davis next contends that the trial court erred when it awarded prejudgment interest to plaintiff for the period between September 6, 1989, the date of the order granting summary judgment, and October 10, 1989. The parties agree that prejudgment interest at a rate of 18% should be awarded from the date of plaintiff's demand for full payment of the note and interest until the date of the final judgment.

Davis contends that September 6, 1989, is the date of entry of final judgment. The September 6, 1989, order, however, is not a final order because it does not dispose of the attorney fees and prejudgment interest issues. Plaintiff contends that final judgment was entered on October 10, 1989. The October 10, 1989, order is likewise not a final order because it does not dispose of the attorney fees and prejudgment interest issue.

The existence of language in the October 10, 1989, order stating that the September 6, 1989, order is final and that no just reason exists for delaying enforcement or appeal of the order does not make a nonfinal order a final order. See *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.* (1990), 197 Ill. App. 3d 948, 951, 557 N.E.2d 246, 248; *Village of Burnham v. Cook* (1986), 146 Ill. App. 3d 124, 126, 496 N.E.2d 1034, 1036.

The record establishes that the order disposing of all issues as to count I was entered on December 11, 1989. It follows that prejudgment interest should have been calculated up to December 11, 1989. The trial court, therefore, erred in calculating prejudgment interest only up to October 10, 1989.

■ Finally, plaintiff requests an award of attorney fees and costs from Davis and his attorneys pursuant to Supreme Court Rule 375 for expenses incurred in defending this appeal. We deny the request because we believe that under an objective standard of conduct a rea-

sonably prudent attorney in good faith could have brought this appeal. See *Kennedy v. Miller* (1990), 197 Ill. App. 3d 785, 555 N.E.2d 105; see also 134 Ill. 2d R. 375(b), Committee Comments.

Accordingly, the order and judgment of the circuit court are affirmed, except that the prejudgment interest amount is vacated and the trial court is directed to calculate and provide for prejudgment interest as stated herein. The case is remanded for further proceedings consistent with what is stated herein.

Affirmed in part, vacated in part and remanded.

TULLY* and CERDA, JJ., concur.

*Justice White heard oral arguments in this appeal prior to his retirement. Since that time, Justice Tully was designated the third member of the panel and has read the briefs and listened to the tapes.