OLIVER BROWN, Plaintiff-Appellant, v. THE CITY OF PEKIN, Defendant-Appellee.

Third District No. 3—83—0488

Opinion filed August 24, 1984.—Rehearing denied January 8, 1985.

Jerry Serritella, of Peoria, for appellant.

William Kasley and Patrick E. Oberle, Corporation Counsel, of Pekin, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Oliver Brown, a fireman for the city of Pekin, appeals from a declaratory judgment in favor of defendant city denying him credit for 11 years' service for purposes of computing his entitlement to longevity pay and vacation time.

Brown was hired as a fireman by the defendant city on December

17, 1957, and he continued in active service until October 1, 1968, when he received a back injury while fighting a fire. He was placed on medical disability status and received a disability pension until May 1, 1982, when he was certified by the pension board as able to return to active duty. When plaintiff returned to active service, he was placed at the bottom of the fire department seniority list by the Pekin director of public safety, who listed plaintiff's date of employment as of May 1, 1982.

The current city policy for compensating members of the fire department was established by Resolution No. 288, adopted August 17, 1981, which provides, in part, as follows:

"7. Longevity increases to base wage:

Each employee shall receive a percentage of their wage as follows for longevity service:

| | |
|---|---|
| 5 to 10 years | —5% |
| 10 to 15 years | —6% |
| 15 to 20 years | —7% |
| 20 years & over | —8% |

When plaintiff returned to active duty, he was paid the base wage without any increment for longevity service. Plaintiff filed a declaratory judgment action, claiming that he was entitled to credit for the 11 years served prior to his disability. At the bench trial, the director of public safety testified that, when he prepared the seniority list in June of 1982, he interpreted Resolution 288 to mean that longevity pay would be based upon *continuous* service. Another fireman, Darrell Meisinger, testified that he resigned from the fire department in 1966 after working 4½ years, that he was rehired in 1967, and that he was given credit for his prior service for purposes of computing his longevity pay but not for purposes of the seniority list prepared in 1982.

The trial court found that Resolution No. 288 does not address the issue of seniority, that plaintiff has no inherent right to seniority or longevity, that the city of Pekin is not precluded from adopting a seniority list based upon continuous service under the provisions of Resolution No. 288, that the city's practice of regular continuous service for longevity pay and vacation time reflects the legislative intent of the city council in adopting Resolution No. 288, and that plaintiff's "medical retirement" from 1968 to 1982 constituted a severance of continuous service for the purpose of Resolution No. 288. The court then held that plaintiff is entitled to longevity pay and vacation time only from May 1, 1982. Plaintiff appeals from the court's judgment. We reverse.

Plaintiff asserts that the trial court erred in construing the phrase "longevity service" to mean "continuous service." He argues that his right to longevity pay is analogous to his right to pension benefits under the Illinois Pension Code (Ill. Rev. Stat. 1981, ch. 108½, par. 4—108), which does not require continuous service for the purpose of determining pension rights of firemen. Another provision of the Pension Code provides that a fireman receiving a disability pension must have a physical examination each year prior to reaching age 50. (Ill. Rev. Stat. 1981, ch. 108½, par. 4—112.) The requirement of an annual physical examination was added to the statute in 1976, so plaintiff presumably had been examined six times before he was found to have recovered from his disability in 1982. Section 4—112 also provides that a fireman who has recovered from his disability shall be reinstated into active service at the same rank or grade which he held at the date he was placed on disability. This latter provision is clearly indicative of a public policy to avoid penalizing a fireman who has been disabled by demoting him in effect to a lower grade or rank when he returns to active duty. Obviously this plaintiff was obligated to return to the fire service or to resign.

Plaintiff does not, of course, contend that the provisions of the Pension Code are controlling or can override this administrative policy decision of the public safety director. But plaintiff does suggest that the Pension Code provisions are indicative of the probable legislative intention of the city council here in using the ambiguous phrase "longevity service" in Resolution No. 288. We suggest that an ambiguity exists where the term "longevity service" is used without further definition (much as was the case in *King v. Equitable Life Assurance Society* (1984), 125 Ill. App. 542, where we found the phrase "active work" to be ambiguous as used in a group life insurance policy insuring a disabled police officer).

It is significant that section 5 of article XIII of the Illinois Constitution of 1970 provides:

> "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired."

The significance of this provision is that it characterizes membership in a pension system as a contractual relationship. This characterization would apply to disability pension benefits as well as general retirement benefits. Similarly, when a fireman is employed by a unit of local government, his employment should be considered an enforce-

able contractual relationship. Here Resolution No. 288 was a part of the employment contract of each fireman. It is a general principle of contract law that an ambiguous provision in a contract will be construed against the party who prepared the contract and who chose the words used, since the scrivener is the one responsible for the ambiguity. (*Des Plaines Motor Sales, Inc. v. Whetzal* (1965), 58 Ill. App. 2d 143, 306 N.E.2d 806.) Applying this principle to the instant case, it is obvious that a city official prepared Resolution No. 288 and the city council adopted it without including "continuous service" in some form. Thus the ambiguous words should be construed against the city and in favor of the employee, and plaintiff should be given credit for the time served prior to his disability.

Longevity pay and other seniority rights are rewards for periods of service to the city and, no doubt, are intended as inducements to keep experienced firemen on the payroll. To deny plaintiff credit for 11 years of prior service simply because he was seriously injured in the line of duty and was placed on disability status for a period of time seems patently unfair. (The record indicates that plaintiff suffered a back injury while fighting a fire and subsequently had to have a spinal fusion. We are not given any other information concerning plaintiff's lengthy disability and subsequent recovery.) The trial court termed plaintiff's period of disability as "medical retirement" and held that it constituted a severance of "continuous service." Under this reasoning, a 30-year veteran fireman could lose his seniority rights and longevity pay by a short period on disability status. This would be more patently unfair. We cannot in good conscience condone a construction of Resolution No. 288 that would permit such an injustice to occur when such a legislative intent is not indicated.

We conclude, therefore, that the trial court erred in interpreting Resolution No. 288 so that the city could deny plaintiff his longevity pay and other seniority rights by treating his period of disability as though it were a severance of his employment as a fireman. We hold that public policy, legislative intent, and plain justice require the city to give this plaintiff credit for the time served as a fireman prior to his job-related disability. The judgment of the trial court is reversed, and this cause is remanded for entry of judgment consistent with this opinion.

Reversed and remanded with directions.

HEIPLE and SCOTT, JJ., concur.