FRANK LARKIN, d/b/a North Shore Movers, Plaintiff-Appellee and Cross-Appellant, v. ALFRED SANELLI, Defendant-Appellant and Cross-Appellee (Karol Pavelt, Defendant and Cross-Appellant).

First District (2nd Division)   Nos. 1—88—2593, 1—88—2594 cons.

Opinion filed May 7, 1991.—Rehearing denied May 30, 1991.

598

William J. Harte, Ltd., of Chicago (William J. Harte and David J. Walker, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and Jerold S. Rawson & Associates, of Northbrook (D. Kendall Griffith and Robert G. Black, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Frank Larkin, d/b/a North Shore Movers (plaintiff), brought an action for breach of contract against defendants Alfred Sanelli (Sanelli) and Karol Pavelt (Pavelt) (jointly, defendants). Following a bench trial, the court entered judgment for plaintiff against Sanelli in the amount of $6,200 plus attorney fees and costs; the court also entered judgment for Pavelt against plaintiff.

Both Sanelli and plaintiff appeal. Sanelli contends that the contracts were void and unenforceable because they were violative of the statutory prohibition concerning contracts for the storage of goods; the trial court erred in dismissing his affirmative defenses asserting the illegality of the contracts; the contracts, even if not void, created a common law bailment, concerning which plaintiff breached his duty of care; the trial court erred in dismissing his counterclaim for breach of duty under a common law bailment; and, the trial court erred in awarding attorney fees. In his cross-appeal, plaintiff contends that the trial court erred in not entering judgment for plaintiff in his claim against Pavelt and that the damages awarded by the trial court were insufficient and contrary to the manifest weight of the evidence.

The evidence elicited at trial was as follows. On April 16, 1984, Glenview State Bank (the bank) hired plaintiff to remove Sanelli's possessions from his home in Metawa, Illinois, pursuant to a court-ordered eviction. The bank agreed to pay for the move and for the first month's storage of the removed goods. Since plaintiff did not have a warehouse, arrangements were made with other storage facilities. Household goods and other personal items were to be stored at Storage of the North Shore, a self-storage company. Tools and items from Sanelli's garage not suitable for storage with the household goods were to be placed in a storage trailer leased from EWL Trucking and parked at North Side International.

All arrangements were made in the name of plaintiff, since Sanelli had no credit history with any of the storage companies. Plaintiff was required to make payments for the storage of Sanelli's goods.

On April 17, 1984, the day of the move, plaintiff dispatched several men to Sanelli's residence to proceed with the eviction and the

transfer of his possessions to the storage sites. A bill of lading was issued which itemized the moving expenses. The parties dispute what occurred during the eviction.

Richard Palmquist, plaintiff's employee, testified that he repeatedly attempted to explain the storage charges to Sanelli, but that Sanelli walked away and told him to talk to his daughter, Karol Pavelt, and to give the bill of lading to her. Palmquist stated that he had a conversation with Pavelt when he gave her the bill to sign and that the only other person involved in that conversation was Steve Musgrove, a representative of the bank. Palmquist discussed the move and storage with Pavelt, explaining that someone had to take care of the billing. Palmquist testified that a second bill of lading was signed by Pavelt that day. Pursuant to this bill of lading, plaintiff was to be reimbursed $190 per month for storage of the household goods and $200 per month for the leasing and the parking of the trailer.

Pavelt testified that it was Steve Klaus, another employee of plaintiff, who approached her regarding the storage bill. He allegedly told her that she had to sign the bill or everything would be removed from the trailer and put in the street. Though Pavelt told him that she was not financially responsible for what was being done, Klaus told her that her signing of the document did not mean that she was financially responsible.

Sanelli's goods remained in storage through September 1985. When further discussions occurred between Sanelli and plaintiff in October 1985, Sanelli had made only one payment of $700. During the October conversations, Sanelli asked plaintiff to continue to "carry him" on his account. Sanelli stated that he had a pending lawsuit against the bank and that he would repay plaintiff from the settlement proceeds. Thereafter, an agreement was reached whereby plaintiff was to continue to make payments on Sanelli's behalf, and the total monthly storage fee was raised from $390 to $440.

On October 15, 1985, Sanelli and plaintiff met to reach a final settlement of Sanelli's account. They agreed that plaintiff would transfer title of a trailer to Sanelli for $1,500 and that plaintiff would transfer into the purchased trailer all of Sanelli's household items from self-storage and all his equipment from the leased trailer. All goods remaining in Pavelt's house were also to be moved into the trailer. Based upon the moving charges of $500, the accumulated storage cost of $4,000, an additional miscellaneous charge of $100, and the $1,500 trailer cost, Sanelli agreed to pay plaintiff $6,100.

Sanelli paid $3,000 that day, leaving a $3,100 balance to be paid when the move was completed.

On October 17, 1985, plaintiff began the move; however, Sanelli halted it because he believed the goods in the leased trailer were damaged. Sanelli subsequently refused to pay the remaining balance due on the agreement. The goods were placed back into storage, with storage costs continuing.

On January 17, 1986, plaintiff filed a two-count complaint seeking monetary damages for breach of contract against Sanelli and Pavelt, a permanent injunction preventing the transfer of title of the trailer sold to Sanelli, and recovery of attorney fees. On February 13, 1986, the trial court issued a preliminary injunction, enjoining defendants from selling or removing items from the storage trailers, the one which Sanelli was to purchase and the one which was leased, located on North Side International's premises.

Defendants answered and later filed a second amended answer with four affirmative defenses and three counterclaims. Pursuant to plaintiff's motion, the trial court struck the second amended answer and all counterclaims. The court further granted plaintiff's motion to strike the first three affirmative defenses, but denied his motion regarding the fourth affirmative defense.

Defendants then filed a third amended answer along with the one affirmative defense which the court had not stricken. No other pleadings were filed; the case went to trial in this posture.

Following trial, judgment was entered in favor of plaintiff and against Sanelli in the amount of $6,200, despite a stipulation by the parties that the damages amounted to $12,820.[1] Judgment was also entered in favor of Pavelt. Later, the court granted plaintiff's petition for attorney fees against Sanelli in the amount of $9,500 plus costs of $154.02. These appeals followed.

I

Sanelli initially contends that the contracts were void and unenforceable because they violated the Personal Property Storage Act (Ill. Rev. Stat. 1987, ch. 111⅔, par. 119 *et seq.*). Plaintiff responds that since this affirmative defense had been stricken by the court in Sanelli's second amended answer, and since Sanelli thereafter filed a third amended answer without repleading or giving any indication

---

[1]Plaintiff's brief states that the stipulated amount was $12,820, but that it was incorrectly read into the record as $12,880.

that he intended to preserve this argument, he has effectively waived this defense.

■■ Section 2—613(d) of the Illinois Code of Civil Procedure establishes that a party seeking to avoid the legal effect of or defeat the cause of action set forth in the complaint must assert any ground or defense, whether affirmative or not, in the answer or reply. Ill. Rev. Stat. 1987, ch. 110, par. 2—613(d).

Moreover, Illinois courts have consistently held that a party who files an amended pleading waives any objection to the trial court's ruling on the former pleadings. (*Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 449 N.E.2d 125; *Coffey v. MacKay* (1972), 2 Ill. App. 3d 802, 277 N.E.2d 748; *Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 193 N.E.2d 833.) Although our research does not disclose any cases which deal precisely with waiver as it applies to amended answers, "answers" are "pleadings" and, therefore, the references to "pleadings" in the cases cited are applicable here. Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn. *Bowman*, 29 Ill. 2d at 272.

■■ Such is the situation in the case at bar. When the trial court dismissed Sanelli's second amended answer, counterclaims, and three of the four affirmative defenses, it granted him leave to file an amended pleading. Sanelli then had the opportunity to replead his allegation pursuant to the Personal Property Storage Act or at least to refer to the prior pleading. He did neither and thus cannot now appeal the dismissal of the earlier pleading.

Sanelli's reliance on *Arnold v. Village of Chicago Ridge* (1989), 181 Ill. App. 3d 778, 537 N.E.2d 823, is misplaced. In that case, the later pleadings made reference to and incorporated the earlier pleadings which had been stricken. Because there was no such incorporation in this case, *Arnold* is inapplicable.

For the foregoing reasons, we conclude that Sanelli has also failed to adequately preserve several of the issues he presents here. Because his third amended answer did not assert the illegality of the contracts or the creation of a common law bailment, we will not address issues arising from those allegations.

## II

Sanelli maintains that plaintiff was not entitled to collect attorney fees. Plaintiff responds that Sanelli has waived this issue by not

objecting at trial and that, even if the issue is not waived, the contracts provide for his collection of attorney fees.

While it is true that Sanelli did not object to the award of attorney fees at trial, the circumstances surrounding the award are unusual and thus require consideration. The trial court entered an order awarding attorney fees to plaintiff after a telephone conference with defense counsel. Though the record does not disclose the specifics of that conversation, the order states:

"This matter coming to be heard upon Plaintiff's Petition for attorney fees, Due Notice having been served upon Counsel for Defendant, Counsel for Defendant having failed to appear, but representing to the Court by telephone that counsel had no objection to Plaintiff's Petition for fees, The Defendant, Alfred Sanelli, having appeared in open Court and having been afforded opportunity to be heard, Defendant having had a telephone conversation with his legal counsel, Mr. James Malloy, in a telephone conference from chambers and having been advised that counsel had withdrawn, it is hereby ordered ***."

In addition to this peculiar language, there is nothing in either bill of lading which clearly provides for attorney fees in this type of action. Paragraph 10 of each bill of lading provides as follows:

"Sec. 10. Collection of all fees are [sic] subject to Illinois Commerce Commission and/or Interstate Commerce Commission Regulations. And to secure payment of the amount due as aforesaid, the undersigned and each of them does hereby, jointly, severally authorize any attorney of any Court of Record to appear for the undersigned or any of them in any such Court in term time or vacation, at any time hereafter, and confess judgment without process against the undersigned in favor of the payee or the holder of this contract for such amount as may appear to be unpaid or owing hereon, together with costs and reasonable attorneys fees and to consent to immediate execution upon any such judgment hereby ratifying and confirming all that said attorney may do by virtue hereof."

■■ There has been no confession of judgment in this case. Moreover, application of the aforementioned provision to a case not involving confession of judgment is not warranted. It is a general principle of contract law that an ambiguous provision in a contract will be construed against the party who prepared the contract and who chose the words used. *Brown v. City of Pekin* (1984), 129 Ill. App. 3d 46,

49, 472 N.E.2d 77, quoting *Des Plaines Motor Sales, Inc. v. Whetzal* (1965), 58 Ill. App. 2d 143, 306 N.E.2d 806.

■ Awarding attorney fees and the proportion to be paid are within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (*Michigan Avenue National Bank v. Evans, Inc.* (1988), 176 Ill. App. 3d 1047, 531 N.E.2d 872.) However, because there is neither a statutory nor a contractual basis for attorney fees in this case, we find that the trial court abused its discretion in awarding such fees to plaintiff. We therefore reverse that portion of the trial court's order.

### III

■ Plaintiff contends in his cross-appeal that the trial court erred in not entering judgment against Pavelt. Pavelt has neither appeared nor filed a brief.

A reviewing court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (*Century 21 Castles by King, Ltd. v. National Bank* (1988), 170 Ill. App. 3d 544, 524 N.E.2d 1222.) Where the judgment of the trial court is not accompanied by findings of fact, the presumption is that the trial court found all issues and controverted facts in favor of the prevailing party. *Century 21*, 170 Ill. App. 3d at 549.

■ The record clearly demonstrates that the evidence at trial was conflicting. Pavelt testified that she was told that her signing of the bill of lading did not mean that she was financially responsible, contrary to Richard Palmquist's testimony. The trial court did not make findings of fact in its order in favor of Pavelt. It may have found Pavelt's testimony to be more credible than Palmquist's, or that Pavelt acted merely as an agent for Sanelli and not in her own individual capacity. Because either conclusion is plausible, we are unable to say that the court's ruling was against the manifest weight of the evidence.

### IV

Plaintiff also contends in his cross-appeal that the damages awarded to him were contrary to the manifest weight of the evidence. He argues that he is entitled to $14,900, which is equal to the stipulated amount plus $5,780 in damages from May 1984 through October 1985 minus the $3,700 in payments already made by Sanelli. Alternatively, he argues that he is entitled to at least $9,120, which is the stipulated amount minus Sanelli's payments. He also asserts

that in either case, he is also entitled to statutory post-judgment interest.

■ A reviewing court may not disturb a trial court's finding as to damages unless that finding is against the manifest weight of the evidence. (*Dale v. Luhr Brothers, Inc.* (1987), 158 Ill. App. 3d 402, 511 N.E.2d 933.) To uphold a contention that a damage award is contrary to the manifest weight, it must be found that the trial court ignored the evidence, or that its measure of damages was erroneous as a matter of law. *MBC, Inc. v. Space Center Minnesota, Inc.* (1988), 177 Ill. App. 3d 226, 532 N.E.2d 255.

■ The order entered by the trial court awarding plaintiff $6,200 in damages offers no explanation as to how that figure was reached. Therefore, it is not clear whether the trial court found that plaintiff proved $5,780 in damages from May 1984 through October 1985. Furthermore, it appears from the record that the $5,780 may have been included in the stipulated amount. Sanelli urges that because the record is insufficient as to the reasons underlying the award, it cannot be said that the court's finding was manifestly erroneous.

It is undisputed that the parties stipulated to $12,820 in damages and that Sanelli made payments totalling $3,700. The trial court appears to have ignored this evidence. Therefore, we remand the case to the circuit court with directions to increase the damages award to $9,120 plus statutory post-judgment interest. We have reviewed the supplemental filings submitted by the parties and find that they do not affect this result.

Accordingly, the judgment of the circuit court of Cook County is affirmed in part and reversed in part, and the cause is remanded to the circuit court with directions consistent with this opinion.

Affirmed in part; reversed in part and remanded with directions.

SCARIANO, P.J., and McNULTY, J., concur.