HARRIS BANK HINSDALE, N.A., f/k/a The First National Bank of Hinsdale, N.A., Plaintiff and Counterdefendant-Appellee, v. GABRIEL F. CALIENDO, d/b/a Callo Development Company and Callo Properties Development Company, *et al.*, Defendants and Counterplaintiffs-Appellants (Harris Bank Hinsdale, N.A., as Trustee, *et al.*, Defendants).

Second District   Nos. 2—91—0786, 2—91—1004 cons.

Opinion filed October 8, 1992.

Norman Hanfling, of Chicago, for appellants.

Steven C. Filipowski and James S. Fenton, both of Griffin & Fadden, Ltd., of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendants, Gabriel F. and Lois E. Caliendo (the Caliendos will later be referred to in the masculine singular), appeal from the orders of the circuit court of Du Page County dismissing their first amended counterclaim against the plaintiff, Harris Bank Hinsdale, National Association (the Bank), and granting the Bank's motion for summary judgment on its first amended and consolidated complaint seeking foreclosure of five separate mortgages and two separate assignments of beneficial interests under land trusts given to secure loans made to Caliendo. The Bank's complaint also sought a judgment against Caliendo under a guarantee for the remaining amount due under a separate loan. Caliendo's first amended counterclaim against the Bank consisted of seven counts: counts I, II and III were based on

written loan commitments from the Bank to him; count IV was for breach of fiduciary duty; count V was for fraud; count VI was for breach of an implied covenant of fair dealing, and count VII was for breach of contract. We affirm.

Since 1979, the Bank has made loans to Caliendo from time to time for a number of purposes. In 1985, Caliendo began a real estate development business acquiring, rehabilitating and reselling improved residential real estate in the Hinsdale area. In 1985 and 1986, Caliendo purchased, rehabilitated and then resold a number of properties located in Hinsdale. These properties were purchased with financing from the Bank and certain of the loans were modified when needed.

In the fall of 1987, Caliendo purchased property at 407 West North Street for a new construction project rather than for rehabilitation. The $400,000 loan to finance the North Street project was evidenced by a note, was secured by a mortgage and was guaranteed by Caliendo. The documents evidencing and securing the loan, as modified and increased first by $100,000 and then by $80,000 with a May 12, 1989, extended maturity date, were appended to the Bank's first amended and consolidated complaint. Caliendo admitted the genuineness of the documents. The North Street project was not sold until the fall of 1989, and the proceeds of the sale were insufficient to pay the loan in full.

In fall 1987, Caliendo purchased a home at 622 South Stough Street in Hinsdale. The purchase and rehabilitation of this property were financed through the Bank, first with a $250,000 mortgage and then two loan modifications for $68,400 and $37,000 with an extended maturity date of April 26, 1989. Caliendo admitted the genuineness of these documents, which were appended to the Bank's complaint.

In March 1988, Caliendo met with Emmett McCarthy, who was the president of the Bank at that time, to discuss plans to develop a property located on 55th Street in Hinsdale. Caliendo alleged that on March 23 McCarthy made a commitment, not in writing, to finance fully the purchase of the site and the construction of new homes on the parcel. Later, on April 1, McCarthy informed Caliendo that the Bank would not finance the project.

Also, in April 1988, Caliendo purchased a property at 553 North Grant Street in Hinsdale for a new construction project. The purchase of the site and the construction of the improvements were financed through loans from the Bank for $454,000 and an additional loan of $66,000 by written modification agreement with an extended maturity date of May 31, 1989. Caliendo admitted the authenticity of the documents evidencing the loan and modification. Although Caliendo denied

liability or the existence of a default, he admitted that the loan was not repaid in accordance with its terms.

In the spring of 1988, Caliendo acquired property at 21 East 8th Street in Hinsdale. The Bank issued a written commitment specifying the terms and conditions upon which it would finance the acquisition of the property and the construction of improvements. The purchase of the property and construction were financed through a loan secured by a mortgage from the Bank for $662,000 to mature April 26, 1989. This loan indebtedness was later agreed by the parties to be reduced to $582,000 by a written loan modification agreement. The documents evidencing and securing the loan and modification were admitted by Caliendo to be authentic.

In fall 1988, Caliendo purchased additional property adjacent to the 8th Street parcel. The purchase of this property was financed through a loan from the Bank in the amount of $80,000 secured by an assignment of Caliendo's interest in land trust No. L-1700. The note bore a maturity date of May 17, 1989. Caliendo admitted the authenticity of the loan documents and note.

In spring 1988, Caliendo also purchased property at 333 North Oak Street, Hinsdale. The Bank issued a written commitment letter detailing the terms and conditions upon which it would extend acquisition and construction financing. The land acquisition and construction were financed by a loan from the Bank in the amount of $431,000. Repayment was to be from the proceeds of sale or at maturity, May 17, 1989, whichever occurred first. Caliendo admitted the authenticity of the loan documents. Caliendo alleged that in March 1989 he discussed with Bank president Emmett McCarthy plans to start construction of the project that spring even though the due date of the note was May 17, 1989. He did not allege an agreement to any extension of the loan maturity date.

The Bank also made a residential mortgage loan to Caliendo in the amount of $275,000 to enable him to purchase his residence at 30 Baybrook Lane, Oak Brook, Illinois, title to which is held in land trust No. L-1304. The $275,000 note evidencing the debt provided for monthly payments with the full debt due and payable on November 1, 1991. By the terms of the note, default would occur upon failure to pay the full amount of each monthly payment on the due date (the first of the month). Caliendo admitted he borrowed this from the Bank and that he has not made certain payments, but denied that the amounts were due or that there was any default for the reasons stated in his counterclaim.

On February 5, 1988, in order to provide Caliendo with some working capital, the Bank made a loan of $175,000 secured by an assignment of the beneficial interest in the land trust holding title to the Baybrook residence. The documents evidencing and securing the loan were appended to the Bank's first amended and consolidated complaint. By its terms, the note evidencing this loan matured on February 5, 1989. Caliendo admitted the authenticity of the documents and that the note was not paid on the stated maturity date.

In his first amended counterclaim, Caliendo alleged that he was a "captive borrower" of the Bank and that he had been told he was "unbankable" due to a prior bankruptcy. Caliendo admitted, however, in his response to a request for admission of facts that, during the relevant time period, he received a car loan from another bank in the amount of $52,900.

Caliendo alleged in his counterclaim that between January 1986 and October 1988 the Bank had made a blanket, unwritten commitment to fund fully all of his projects so long as he limited himself to "core" Hinsdale properties. This allegation is contradicted by an allegation in count VII of his counterclaim that on April 1, 1988, before the Grant Street, 8th Street and Oak Street parcels were purchased, Bank president McCarthy informed him that the Bank would not finance the 55th Street project in Hinsdale. Caliendo also alleged in his counterclaim that the Bank's unwritten promises and course of dealing with him created a commitment to continue to extend and increase loans indefinitely despite the fact that each admittedly genuine loan agreement, commitment and loan modification agreement contained a definite loan amount and maturity date. Caliendo alleged that the parties' course of dealing created an unconditional obligation on the part of the Bank to grant him a loan increase whenever needed. Caliendo admitted, however, in his counterclaim that, in the fall of 1988, the Bank suggested that Caliendo reduce the amount of credit available on the 8th Street project in order to increase the lines on some of his other projects. This was done, thereby decreasing his indebtedness on the 8th Street project from $662,000 to $582,000. Without pleading any specific details, Caliendo alleged in his counterclaim that the Bank sometimes loaned him money before loan documents were prepared or signed and that the maturity date of a note was never used by the Bank as a final date when a loan had to be paid, but, instead, the maturity date was a means of keeping track of the progress of a loan. The various loan modification agreements which were appended to the Bank's first amended and consolidated

complaint were signed on or before the respective maturity dates of the loans.

Caliendo admitted in his first amended counterclaim that, during the initial years of their banking relationship, the Bank exhibited loyalty, good faith and truthfulness. The record contains no examples of any acts by the Bank in breach of its written contracts, obligations of good faith or alleged fiduciary duties until March 31, 1989, which was approximately six weeks after the $175,000 working capital note matured on February 5, 1989. On or about that March 31 date, Caliendo alleged that the Bank conceived and executed a fraudulent and malicious scheme to destroy his business. In furtherance of this scheme, Caliendo alleged that after March 31, 1989, officers of the Bank refused to extend him further credit; attacked his abilities as a developer; demanded additional insurance; impugned his business reputation in the Hinsdale community; returned unpaid checks issued to subcontractors; refused to return lien waivers provided by subcontractors; unilaterally decreased lines of credit; refused to fund loans to which it had committed; and threatened foreclosure. The next debts to mature after the February 5 working capital debt were those for the 8th Street and Stough Street projects which matured on April 26, 1989.

Caliendo alleged that he met with Bank president McCarthy on May 5, at which time McCarthy promised to "take care of" all Caliendo's problems and concerns. Caliendo then met with another Bank officer, Frank Cannon, on May 9 at which time Cannon again allegedly threatened foreclosure of Caliendo's personal residence if Caliendo would not transfer the "finished projects" to the Bank. Three days after that meeting, on May 12, 1989, the North Street loan matured.

On May 16, through legal counsel, Caliendo contacted Harris Bank, the Bank's parent company, to inquire about a settlement. Immediately thereafter, Bank president McCarthy allegedly telephoned Caliendo and, when Caliendo returned the call, threatened to put Caliendo out of business. Caliendo alleged that after the May 16 telephone call, he was aware that the Bank had no intent to honor its commitments. The loans to finance the Oak Street project and to acquire the vacant lot behind 8th Street matured on May 17.

Caliendo alleged in his first amended counterclaim that on May 18 the Bank, under the signature of Kay Olenec, another Bank officer, sent him a letter outlining the terms of a "proposed workout" which he found unacceptable, to which he never agreed, and over which the parties had not negotiated. Caliendo further claimed the Bank never informed him that he was in default until November 1989. That alle-

gation is contradicted by an exhibit attached to the Bank's complaint to foreclose. The exhibit is a letter, dated July 15, 1989, advising Caliendo that he was in default on the Baybrook Lane residence mortgage.

The last debt to mature was on the Grant Street project on May 31, 1989. By that date, all of the loans were past due by their express terms.

Caliendo alleged that on June 30 the Bank told him that he must halt work on all projects and that he would receive no further funds from the Bank. Thereafter, neither Olenec nor McCarthy would discuss the situation with Caliendo. Caliendo alleged that, at a settlement conference on August 11, other representatives of the Bank agreed to a settlement on some issues, but refused to put the agreement in writing and subsequently reneged on it. Thereafter, Caliendo alleged, the Bank harassed his suppliers, frequently asked for information about Caliendo, and ordered frequent credit checks on Caliendo. Caliendo eventually sought protection under Chapter 11 bankruptcy proceedings.

In December 1989, the Bank first filed an action to foreclose the mortgage and assigned beneficial interest on the Baybrook Lane residence. An action to foreclose the mortgages on the various other development parcels was filed shortly thereafter. Caliendo filed his answer and counterclaim as to each foreclosure case. The Bank filed motions to dismiss Caliendo's counterclaims. Caliendo confessed, on presentation of the motions, that one of the motions had merit and sought and received leave to amend. The Bank's actions were then consolidated, and it filed its first amended and consolidated complaint. To that, Caliendo filed an amended answer and amended counterclaim.

The Bank then filed motions to dismiss Caliendo's amended counterclaim, pursuant to sections 2—615 and 2—619 of the Civil Practice Law (Ill. Rev. Stat. 1991, ch. 110, pars. 2—615, 2—619), for summary judgment (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005) and for appointment as mortgagee in possession (Ill. Rev. Stat. 1991, ch. 110, par. 15—1701(b)). The section 2—615 and 2—619 motions to dismiss were briefed, argued and granted, with leave to amend. The trial court heard argument and testimony on the motion for appointment of mortgagee in possession and the Bank's motion was granted.

Caliendo then filed a pleading designated as his "First [sic—was his second] Amended Counterclaim." The Bank again filed motions to dismiss, and, after argument, the court granted the Bank's section 2—615 motion. Caliendo failed to suggest any amendment to cure the

defects in his first amended counterclaim, and the court granted the motion with prejudice.

Caliendo then sought and obtained leave to file an amended answer to the Bank's first amended and consolidated complaint for foreclosure. The Bank stood on its motion for summary judgment, and Caliendo filed his answer to the motion with a supporting affidavit. The motion for summary judgment was granted after hearing, the court finding no just reason to delay enforcement or appeal pursuant to Illinois Supreme Court Rule 304 (134 Ill. 2d R. 304(a)). Thereafter, the Bank moved for entry of a judgment of foreclosure. The motion was heard and granted, and the court found no just reason to delay enforcement or appeal (134 Ill. 2d R. 304(a)). Caliendo again filed a notice of appeal, and this court then consolidated the appeals.

■ Caliendo's first contention is that the court erred in dismissing with prejudice all seven counts of his first amended counterclaim. As noted above, the counterclaims purported to state causes of action for breach of contract, breach of fiduciary duty, breach of implied covenant of fair dealing, and fraud. Citing *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, the Bank argues that the issue of the propriety of the dismissal of the counterclaim has not been preserved for review because Caliendo, in effect, abandoned it by filing an amended answer which deleted any and all reference to the counterclaim. Acknowledging *Foxcroft* for the proposition that, by the filing of an amended pleading, the issues raised in the prior complaint are no longer in the case if they were not also raised in the amended complaint, Caliendo replies he does not quarrel with that statement of law, but asserts that "the two pleadings are separate and distinct" and the dismissal of the counterclaim became appealable when the court entered the appealable order entering summary judgment.

We see at least two problems with this issue, both of which preclude addressing its merits. First, we take Caliendo's reference to "the two pleadings" to mean his amended answer and his first amended counterclaim. As to their being "separate and distinct," we disagree. Caliendo's counterclaim was an integral part of his initial answer to the Bank's complaint for foreclosure. In answer to each count of the Bank's complaint, Caliendo denied either that he was in default or in default as to the amounts owed or that the Bank had a right to foreclose "for the reasons stated in the Counterclaim." After two subsequent attempts by Caliendo to state causes of action in his counterclaim which would withstand the Bank's motions to dismiss, the court, on May 1, 1991, dismissed Caliendo's first amended coun-

terclaim with prejudice. Afterward, on May 13, Caliendo filed an amended answer to the Bank's complaint for foreclosure which included in paragraph three thereof a reference to Caliendo's "Amended Counterclaim."

This reference to the then-dismissed amended counterclaim was noted by the Bank at the hearing on summary judgment, and Caliendo stated:

"MR. HANFLING [Caliendo's counsel]: Your Honor, first, counsel is correct and I would ask to amend on its face my amended answer, where in Paragraph 3 I use the words for the reasons stated in the amended counterclaim, *rather than for the reasons stated herein.*

Obviously this pleading *** was based upon my—the amended counterclaim having been stricken and the need to replead for that reason.

It is a typographical omission, which I ask to correct. I don't believe it in any way changes anything that counsel knew or didn't know." (Emphasis added.)

Caliendo also filed an amended answer to the Bank's motion for summary judgment. His motion for leave to file this amendment alleged in pertinent part:

"1. The Answer to the pending Motion for Summary Judgment of [the Bank] was prepared and filed while the Counterclaim of Caliendo was still pending in this matter.

2. The Counterclaim contained certain matters which were part of the Answer of Caliendo to the Motion for Summary Judgment.

3. Since the Counterclaim has been dismissed, those matters are no longer before the Court and, therefore, could be interpreted as no longer being part of the Answer to Motion for Summary Judgment.

4. The matters contained in the Amended Answer, which Caliendo is asking leave to file, are not new, but were contained either in the Counterclaim or in the motions and subsequent pleadings relating to the Counterclaim and, therefore, are not any surprise to [the Bank]. These items are taken from material sent by [the Bank] to Caliendo.

5. The filing of the Amended Answer to Motion for Summary Judgment will present the Court with Caliendo's full Answer to the Motion of [the Bank] and will eliminate piecemeal arguments."

We think it clear from the above that Caliendo's subsequent amendment to his answers to the Bank's complaint for foreclosure and its motion for summary judgment show he acquiesced in the court's dismissal of his counterclaim and, in fact, intended to subsume therein "matters" which were contained in his counterclaim and other pleadings relating thereto. We agree, therefore, with the Bank that Caliendo abandoned his counterclaim as such and may not now appeal the court's dismissal of it. (*Foxcroft*, 96 Ill. 2d at 153-55; *Larkin v. Sanelli* (1991), 213 Ill. App. 3d 597, 601-02; see also *Du Page Aviation Corp. v. Du Page Airport Authority* (1992), 229 Ill. App. 3d 793, 799-800.) In *Foxcroft* the supreme court stated:

> " 'Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.' [Citation.]
>
> * * *
>
> *** [W]e perceive no undue burden in requiring a party to incorporate in its final pleading all allegations which it desires to preserve for trial or review." (*Foxcroft*, 96 Ill. 2d at 154.)

Although *Foxcroft* involved the filing of an amended complaint, the court in *Larkin v. Sanelli* found the waiver principles in *Foxcroft* and other cases applied to amended answers, as well, since they also were "pleadings." (*Larkin*, 213 Ill. App. 3d at 602.) *Larkin* also considered the rule that a party seeking to avoid the legal effect of or defeat the cause of action set forth in the complaint must assert any ground or defense, whether affirmative or not, in the answer or reply. Ill. Rev. Stat. 1991, ch. 110, par. 2—613(d); *Larkin*, 213 Ill. App. 3d at 602.

The other problem we find which would justify a refusal to consider the issue on its merits is the fact Caliendo states no relevant authority in support of his contention that counts I through VII state the causes of action he asserts. Beyond citing authority for the general proposition that a cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover (*Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298) and the proposition that all well-pleaded allegations of fact must be taken as true in determining whether the motion to dismiss was properly allowed (*Edgar County Bank & Trust Co.*, 57 Ill. 2d at 298), Caliendo cites no authority in support of his contentions, nor does his reply specifically refute the pertinent and persuasive authority cited by the Bank in support of affirmance of the court's dismissal order.

Supreme Court Rule 341 requires that arguments be supported with citation of authority (134 Ill. 2d R. 341(e)(7), (f)), and arguments raised without citation to authority do not merit consideration and are waived. (*Susman v. Price* (1992), 230 Ill. App. 3d 639, 641.) We proceed to consider Caliendo's next contention.

Caliendo argues the court erred in granting the Bank's motion for summary judgment. Specifically, he claims it was reversible error for the court to decide at the motion stage that a letter appended to his affidavit in response to the Bank's motion for summary judgment would be inadmissible at trial, and the court had no way of knowing what the testimony would be at trial regarding the note for the working capital loan due February 5, 1989.

In his amended answer to the Bank's first amended and consolidated complaint, Caliendo admitted the essential, factual allegations of the complaint; admitted the authenticity of the documents attached to the complaint; denied generally that he was in default; alleged that the Bank without cause or justification breached commitments to fund construction of his projects; and alleged that, without a commitment for construction financing for the projects, he never would have acquired the properties or incurred the indebtedness. He did not allege that he ever paid any of the notes or deny the factual allegations of nonpayment. As to the Bank's nonpayment allegation concerning the $175,000 working capital loan note which bore a February 5, 1989, maturity date, Caliendo alleged in his answer that "[h]ad [the Bank] not improperly and without cause, in the Spring of 1989, ceased funding the construction projects of Caliendo, sufficient funds would have been available to repay this loan."

The Bank's motion for summary judgment was supported by the affidavit of John Kovacs, an officer of the Bank, who stated that, to his personal knowledge, the allegations of the complaint were true and correct, and described the facts relating to each default with particularity. Among other things, Kovacs stated that Caliendo defaulted on the $175,000 note on February 5, 1989, and that no payments were made on that note since the date of default.

In opposition to the Bank's motion for summary judgment, Caliendo submitted an amended answer to the motion for summary judgment to which was attached his own affidavit. Therein, Caliendo made a general denial of default; claimed that the allegation of a February 5 due date on the working capital loan note was contradicted by a letter dated May 18, 1989, from Bank vice-president Kay M. Olenec addressed to Caliendo and attached to his affidavit; claimed that, "on many occasions," notes matured and new notes were not signed until

later; and claimed that the Bank continued to loan money on two of his properties for some time after the alleged February 5 default date. Attached to Caliendo's affidavit was Kay Olenec's May 18 letter. The letter outlines a workout proposal as to each of the development parcels and Caliendo's Baybrook Lane residence and requests that Caliendo acknowledge acceptance of the described terms by signing and returning an enclosed copy. Regarding the $175,000 loan, Olenec remarked that "this note #548081—12—89 matured April 14, 1989."

The Bank moved to strike paragraphs 3, 4 and 5 of Caliendo's affidavit on the bases that his references therein to certain documents were not supported by sworn or certified copies of such documents in violation of Supreme Court Rule 191 (134 Ill. 2d R. 191(a)); that Olenec's letter was in the nature of a settlement offer which is not a fact admissible in evidence at trial; and that her letter cannot be used to contradict the terms of a written instrument which is not ambiguous on its face.

At the hearing on the Bank's motion for summary judgment, the Bank's and Caliendo's arguments focused on the $175,000 working capital loan note, the alleged default on which note preceded all the other defaults. Specifically, the parties argued whether Olenec's letter was admissible to create a genuine issue of material fact as to the due date of the $175,000 working capital loan note. The court found that it was not.

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (*In re Estate of Hoover* (1992), 226 Ill. App. 3d 422; *Continental Mobile Telephone Co. v. Chicago S M S A Limited Partnership* (1992), 225 Ill. App. 3d 317; Ill. Rev. Stat. 1991, ch. 110, par. 2—1005.) In deciding whether a genuine issue of material fact exists, the court must construe all pleadings, depositions, affidavits and admissions strictly against the movant and liberally in favor of the opponent. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263; *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.* (1992), 226 Ill. App. 3d 507.) On appeal from a grant of summary judgment, this court's function is to determine whether the trial court properly concluded there was no genuine issue of material fact and, if there was not, whether judgment was correct as a matter of law. *Dalen v. Ozite Corp.* (1992), 230 Ill. App. 3d 18, 30; *People ex rel. Burris v. Memorial Consultants, Inc.* (1992), 224 Ill. App. 3d 653.

■ In order to withstand a motion for summary judgment, the nonmovant must present some factual basis that arguably may entitle him to judgment. (*Dalen*, 230 Ill. App. 3d at 30; *Weil, Freiburg &*

*Thomas, P.C. v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383); if the moving party supplies facts which, if not contradicted, would entitle that party to judgment as a matter of law, the opposing party cannot rely on his pleadings alone to raise a material issue of fact (*Hermes v. Fischer* (1992), 226 Ill. App. 3d 820). The function of affidavits in summary judgment proceedings is to show whether the issues raised are genuine and whether each party has competent evidence to offer which tends to support his side of the issue. (*In re Estate of Hoover* (1992), 226 Ill. App. 3d 422.) The form of affidavits used in connection with motions for summary judgment is governed by Supreme Court Rule 191 (134 Ill. 2d R. 191; Ill. Rev. Stat. 1991, ch. 110, par. 2— 1005(e)); the affidavit is actually a substitute for testimony taken in open court and should meet the same requisites as competent testimony. (*Skipper Marine Electronics, Inc. v. United Parcel Service, Inc.* (1991), 210 Ill. App. 3d 231.) *Inter alia*, an affidavit in opposition to a motion for summary judgment shall not consist of conclusions but of facts admissible in evidence and shall have attached to it sworn or certified copies of all papers upon which the affiant relies. 134 Ill. 2d R. 191(a).

Caliendo's argument here is not that the Olenec letter is or would be admissible at trial but, rather, that it was reversible error for the trial court to decide at the motion stage that Olenec's letter would not be admissible at trial. He argues that a factual issue such as the one at bar which goes to the heart of the dispute between the parties should not be determined without a trial where evidence can be presented and witnesses allowed to testify. Caliendo cites no authority in support of his "reversible error contention," and, indeed, the law is contrary to his contention. It is precisely the purpose of summary judgment proceedings to determine whether there is competent evidence showing a genuine issue of material fact. Although the court at the summary judgment stage does not try the issues (*Siegel v. Levy Organization Development Co.* (1991), 219 Ill. App. 3d 579; *Patch v. Township of Persifer* (1991), 214 Ill. App. 3d 108), evidence that would be inadmissible at trial may not be considered in support of or in opposition to a motion for summary judgment. (*Kaplan v. Disera* (1990), 199 Ill. App. 3d 1093; *Luthy v. Keehner* (1980), 90 Ill. App. 3d 127.) Necessarily, the trial court must consider and decide whether the affidavits and attachments which purport to create a genuine issue of material fact would be admissible evidentiary matter at a trial on the merits.

Caliendo does not state in his affidavit any facts from which it may be concluded that, in fact, there was a modification of the

$175,000 working capital loan note such as would have extended the due date. Accordingly, he could not testify at trial that such modification occurred. The sole piece of evidence he offered in an attempt to create a genuine issue of material fact is Olenec's letter stating that the note matured April 14, 1989. Olenec's letter is unsworn and uncertified in violation of Supreme Court Rule 191, and the court properly could disregard it in deciding the motion for summary judgment. Regardless of the correctness of the court's decision that Olenec's letter would be inadmissible at trial, it is clear Caliendo's affidavit and its defective attachment were insufficient to counter Kovac's affidavit establishing the fact of Caliendo's default on this working capital loan and, therefore, no genuine issue of material fact warranting trial could be said to exist. *Cf. Ben Franklin Financial Corp. v. Davis* (1992), 226 Ill. App. 3d 414 (inconsistency in paragraphs of complaint regarding date upon which payment on secured note was accelerated did not create issue of material fact sufficient to preclude summary judgment).

For the reasons above, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and DOYLE, JJ., concur.