NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241186-U

NO. 4-24-1186

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 4, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| TONI KENNY, | ) | Appeal from the |
| Petitioner-Appellee, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| RAPA ROBINSON, | ) | No. 24OP799 |
| Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michelle S. Fitzsimmons, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Doherty and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court's order granting a petition for
a stalking no contact order was not against the manifest weight of the evidence.

¶ 2        In August 2024, the trial court granted petitioner Toni Kenny's petition for a
stalking no contact order pursuant to the Stalking No Contact Order Act (Act) (740 ILCS 21/1
*et seq.* (West 2024)). On appeal, respondent, Rapa Robinson, argues the court erred when
granting the petition. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        In July 2024, petitioner filed her verified petition, alleging (1) on June 27, 2024,
respondent came to petitioner's place of work seeking to discuss petitioner "contacting"
respondent's husband and discussing said issue further with petitioner's coworkers and, (2) on "6
October 24," respondent again came to petitioner's work regarding the same issue. The record

indicates respondent had filed her own petition for a stalking no contact order in Rock Island County case No. 24-OP-785, which is not the subject of this appeal. However, because both matters proceeded to simultaneous plenary hearings in August 2024, we recount the testimony from both parties—relevant to the issues on appeal—due to the overlapping nature of how the hearings occurred.

¶ 5        At the hearing, respondent testified petitioner had informed her in 2020 that her husband was having an affair. In October 2021, she stated petitioner was "recording or taking pictures" of her and yelled, "[w]***, w***" at her. Respondent recalled another incident from June 27 where she had visited a building at the Rock Island Arsenal (Arsenal) to inquire about educational assistance for her son, she encountered petitioner, and an argument ensued. Respondent said she asked petitioner why she was "calling" her husband and that she would tell petitioner's supervisor. She said petitioner replied, "You deal with your husband." Respondent denied petitioner made any threats to her on that day. Respondent told the trial court she disputed some of the locations petitioner wanted to restrict her from, as they were buildings at the Arsenal she visits for reasons unrelated to petitioner's allegations. The court, over petitioner's objection, admitted photographs of Facebook messages respondent alleged were sent by petitioner in July 2024. The messages appeared to discuss respondent's husband's alleged infidelity.

¶ 6        Reginald Shivmangal, respondent's son, testified, during the "summer," he was at the Arsenal inquiring about educational assistance when respondent encountered petitioner. On cross-examination, he stated respondent was not with him the entire time he was at the Arsenal.

¶ 7        Petitioner testified she met respondent's husband in either 2018 or 2019. She stated he would talk to her frequently and give her gifts. She eventually learned he was at the time dating respondent, but he continued to communicate with her. Petitioner recalled an

incident from October 6, 2021, where she observed respondent outside the building where she worked. Petitioner said she took "a picture" of respondent and called the police, who instructed her to come to the police department. She said respondent went into her workplace and talked to her coworkers about her. Petitioner recalled another incident from June 27, 2024, when respondent asked her, "Why are you still contacting my husband?" Petitioner said, "What are you talking about?" and "You need to deal with your husband." Petitioner stated respondent then proceeded to petitioner's workplace again and told petitioner's supervisor she was "messing around with [respondent's] husband." Petitioner stated respondent had "no business" on the "second floor" where petitioner worked. Petitioner stated respondent was banned from the Arsenal for 30 days following this incident. Petitioner denied sending Facebook messages to respondent. The trial court admitted a photograph of respondent's Facebook post showing an image of respondent's and petitioner's husbands together from either 2018 or 2019 without objection. On cross-examination, petitioner stated she wanted building No. 154 of the Arsenal to be a protected location because her "team" and supervisor work there.

¶ 8        Corey Ortiz testified he worked with petitioner for "about five months," and for the last month, he was her "acting supervisor." Ortiz recalled an incident from late "June, early July" when respondent came to petitioner's workplace and told Ortiz that petitioner was "a h***" and had slept with respondent's husband. Ortiz said respondent was yelling and "the whole hallway could hear" her.

¶ 9        Respondent, on redirect examination, recalled the incident where the police had barred her from the Arsenal. She stated the police told her she was "showing up at [petitioner's] workplace" and "instigated an altercation." Respondent stated the police requested she sign the document barring her from the property, but she refused to sign it.

¶ 10 No further evidence was presented.

¶ 11 The trial court stated it needed to find "if there ha[d] been two or more incidences of harassment as defined under statute" to grant petitioner's petition. The court found petitioner's claim of two events—one from October 2021 and the other from June 2024—were corroborated by Ortiz's testimony and respondent's admission to calling petitioner a "w***" in 2021. The court stated respondent's repeated visits to petitioner's workplace had escalated into "disturbances at the workplace" was "harassment under the statute." The court granted petitioner's plenary stalking no contact order.

¶ 12 The record contains an undated and unstamped motion for substitution of judge drafted by respondent. It appears the motion was drafted after the plenary hearing because it claims the evidence was insufficient to support granting petitioner's order. The record does not show respondent's motion was addressed, and she subsequently filed a notice of appeal.

¶ 13         II. ANALYSIS

¶ 14 We begin by noting petitioner, as the appellee, did not file a brief in this matter. In *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009), this court explained a reviewing court may exercise three discretionary options in the absence of an appellee's brief:

> "(1) [a reviewing court] may serve as an advocate for the appellee and decide the case when the court determines justice so requires, (2) it may decide the merits of the case if the record is simple and the issues can be easily decided without the aid of the appellee's brief, or (3) it may reverse the [circuit] court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record." (citing *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976)).

Because we find the record in this case is simple and the issues can be easily decided without the aid of an appellee's brief, we will proceed to respondent's arguments on appeal.

¶ 15    Respondent argues (1) the evidence was insufficient to show she had engaged in a "course of conduct" as defined under the Act, (2) the trial court erred when it failed to apply a reasonable person analysis, (3) the evidence was insufficient to support a finding a reasonable person would have feared for their safety based on her conduct, and (4) the court erred when it relied on the terms "harassing" and "harassment" when such terms are not defined and do not appear in the Act.

¶ 16    The Act provides a civil remedy for victims of stalking. 740 ILCS 21/5 (West 2024). The Act defines stalking as "engaging in a course of conduct directed at a specific person, and he or she knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety, the safety of a workplace *** or suffer emotional distress." *Id.* § 10. The Act defines "course of conduct" as "2 or more acts, including but not limited to acts in which a respondent directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, or threatens a person *** [or] engages in other contact." *Id.* The Act defines "reasonable person" as "a person in the petitioner's circumstances with the petitioner's knowledge of the respondent and the respondent's prior acts." *Id.* The Act defines "emotional distress" as "significant mental suffering, anxiety or alarm." *Id.* Lastly, the Act defines "contact" as follows:

> "any contact with the victim, that is initiated or continued without the
> victim's consent, or that is in disregard of the victim's expressed desire
> that the contact be avoided or discontinued, including but not limited to
> being in the physical presence of the victim; appearing within the sight of

the victim; approaching or confronting the victim in a public place or on private property; [or] appearing at the workplace or residence of the victim[.]" *Id.*

¶ 17 The Act requires a petitioner to prove stalking by a preponderance of the evidence. *Id.* § 30(a). The Act does not require a victim of stalking to inform the stalker that the underlying course of conduct is unwanted; rather, the stalker's course of conduct must be nonconsensual. *McNally v. Bredemann*, 2015 IL App (1st) 134048, ¶ 14. "We will not reverse a trial court's decision to issue a stalking no contact order unless it is against the manifest weight of the evidence." *Piester v. Escobar*, 2015 IL App (3d) 140457, ¶ 12. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *McNally*, 2015 IL App (1st) 134048, ¶ 12.

¶ 18 Respondent first argues there was no evidence she had engaged in a "course of conduct" as defined under the Act. Specifically, she argues no evidence was presented that she (1) monitored, surveilled, or observed petitioner, (2) threatened petitioner, or (3) threatened petitioner's workplace.

¶ 19 Under the Act, a course of conduct requires two or more acts, which may include, "but [are] not limited to," a respondent monitoring, surveilling, or observing the petitioner, threatening the petitioner, or threatening the petitioner's workplace. 740 ILCS 21/10 (West 2024). The two or more acts under a course of conduct also include "engages in other contact." *Id.* Contact, under the Act, includes being in the victim's physical presence or appearing within sight of the victim. *Id.* It also includes appearing at the victim's workplace. *Id.* The evidence at the hearing described two incidents: one from October 2021 and another from June 2024. While

we are unsure whether two incidents nearly three years apart are sufficient temporally within the meaning of "2 or more acts" (*id.*), we cannot "add provisions that are not found in a statute, nor may [we] depart from a statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express." *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010). Thus, petitioner had satisfied the "2 or more acts" requirement for a course of conduct as defined by the Act. Furthermore, both of respondent's acts involved her appearing at petitioner's workplace. 740 ILCS 21/10 (West 2024). These actions would satisfy "engag[ing] in other contact" under the Act. *Id.* Accordingly, we find the trial court's determination respondent's conduct had satisfied "course of conduct" under the Act (*id.*) was not against the manifest weigh of the evidence.

¶ 20      Respondent next argues the trial court erred when it failed to mention or apply the reasonable person analysis as defined under the Act. Respondent does not cite any caselaw or statute that requires the court to explicitly mention or cite a reasonable person analysis when granting a stalking no contact order.

¶ 21      As a reviewing court, we are

> "entitled to have the issues clearly defined and supported by pertinent authority and cohesive arguments; [the appellate court] is not merely a repository into which an appellant may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an advocate or seek error in the record." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)).

We will not "research the issues on the appellant's behalf." *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19. Likewise, we will not "formulate an argument for [a respondent] out of whole

cloth." *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13. Moreover, "[w]here the judgment of the trial court is not accompanied by findings of fact, the presumption is that the trial court found all issues and controverted facts in favor of the prevailing party." *Larkin v. Sanelli*, 213 Ill. App. 3d 597, 604 (1991).

¶ 22   Respondent does, however, argue against this presumption by contending the evidence was insufficient to support the trial court's finding a reasonable person would have feared for their safety based on respondent's conduct.

¶ 23   The Act's definition of stalking required respondent's course of conduct to either "cause a reasonable person to fear for his or her safety *** or suffer emotional distress." 740 ILCS 21/10 (West 2024). The evidence showed respondent's course of conduct by appearing at petitioner's workplace, making a scene in front of petitioner's coworkers, and insisting on speaking to petitioner's supervisor would be sufficient to cause a reasonable person significant mental suffering, anxiety, or alarm. See *id.* (defining emotional distress). As a reviewing court, we "may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct." (Internal quotation marks omitted.) *People v. Smith*, 2024 IL App (1st) 221455, ¶ 7.

¶ 24   Lastly, respondent argues the trial court erred by relying on the terms "harassing" or "harassment" when reaching its decision when such terms are not defined, nor do they appear, in the Act. We agree these terms are not utilized in the Act. However, respondent again fails to cite any caselaw or statute that makes the court's erroneous use of these terms reversible error. Besides, as we noted above, we may affirm the court's order on any basis in the record, regardless of whether the court had relied on that basis or its reasoning was correct. To prove stalking, petitioner was required to show respondent engaged in a course of conduct that she

knew or should have known would have caused a reasonable person to, *inter alia*, fear for her safety *or* suffer emotional distress. We have already found the evidence was sufficient to support the court's finding respondent's actions satisfied the Act's definition of course of conduct and such actions would cause a reasonable person emotional distress. Therefore, we find the court's order granting petitioner's stalking no contact order was not against the manifest weight of the evidence.

¶ 25                                          III. CONCLUSION

¶ 26             For the reasons stated, we affirm the trial court's judgment.

¶ 27             Affirmed.