# Illinois Official Reports

## Appellate Court

---

**Private Bank & Trust Co. v. EMS Investors, LLC**, 2015 IL App (1st) 141689

---

| | |
|---|---|
| Appellate Court Caption | THE PRIVATE BANK AND TRUST COMPANY, Plaintiff-Appellee, v. EMS INVESTORS, LLC, HERBERT P. EMMERMAN, and EQUITY MARKETING SERVICES, INC., Defendants-Appellants. |
| District & No. | First District, Third Division<br>Docket No. 1-14-1689 |
| Filed | May 27, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-9313; the Hon. Raymond Mitchell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | William T. Dwyer, Jr., of O'Rourke, Hogan, Fowler & Dwyer, of Chicago, for appellants.<br><br>Jason M. Metnick and Monica J. Paine, both of Meltzer, Purtill & Stelle, LLC, of Chicago, for appellee. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion. |

## OPINION

¶ 1      In the absence of a reservation of rights, co-borrowers contend that a lender's release and discharge of a third co-borrower regarding mortgages secured by property of the third co-borrower and others released and discharged them as well.

¶ 2      Herbert P. Emmerman and Cheryl Bancroft formed EMS Investors, LLC (Investors), to convert an apartment building in downtown Chicago into condominiums. To finance the project, Emmerman, Bancroft, and Investors borrowed $1.62 million from The Private Bank and Trust Company (Private Bank). Equity Marketing Services, Inc. (EMS), another entity Bancroft and Emmerman owned, guaranteed the loan. Bancroft and her husband also had several mortgages with Private Bank on property they owned individually, together and through Bancroft Group LP (BGLP). When the housing bubble collapsed in late 2008, Bancroft, Emmerman, and Investors slid into financial difficulties. Sales of condominium units stalled, making repayment of the $1.62 million loan difficult. Before the note became due, Bancroft filed for chapter 11 bankruptcy (11 U.S.C. § 101 *et seq.* (2006)), and she and her husband entered into a settlement agreement with Private Bank. The settlement agreement, which only mentioned the Bancrofts' personal real estate and not the $1.62 million loan, released and discharged them "from any and all claims, demands, actions, causes of action, suits, costs, damages, expenses and liabilities of every kind, character and description, either direct or consequential, at law or in equity." Emmerman was not a party to the release or aware of it at that time.

¶ 3      When the note matured, Emmerman asked for an extension or modification. Private Bank refused and filed a breach of contract action against Emmerman and Investors on the loan and EMS on its guaranty. The parties filed cross-motions for summary judgment. Emmerman and Investors contended that Private Bank's release of Bancroft also released them from liability as co-obligors under the note. The trial court disagreed, granting Private Bank's motion for summary judgment and denying defendants' motion. The court also entered judgment in Private Bank's favor for the amount owed on the loan, interest, and attorney fees.

¶ 4      Emmerman and Investors argue the trial court erred in finding that the Private Bank's settlement agreement with Bancroft did not release all of them from liability on the note in the absence of a reservation of rights. We affirm. The language of the release between the Bancrofts and Private Bank and the circumstances under which it arose present enough evidence to demonstrate that Private Bank did not intend to release defendants from liability on the note. Thus, the trial court did not err in granting Private Bank's motion for summary judgment and entering judgment in the bank's favor.

¶ 5                          BACKGROUND

¶ 6      The facts are not in dispute. EMS Investors, LLC, is an Illinois limited liability company, with two members, Herbert C. Emmerman and Cheryl Bancroft. On January 29, 2008, Private Bank loaned $1.62 million to Investors, Emmerman and Bancroft, which was documented by a promissory note and a first amended promissory note. Emmerman and Bancroft were co-makers on the promissory note and agreed to be "jointly and severally"

liable under it. Defendant Equity Marketing Services, Inc., guaranteed repayment of the loan. Defendants defaulted under the terms of the note and amended note by failing to make payment due on the maturity date, January 1, 2012. EMS also defaulted by failing to make payments after defendants defaulted.

¶ 7       On November 22, 2011, a few months before the note became due, Private Bank entered into a settlement agreement with Cheryl Bancroft, Stephen Bancroft, and BGLP. The settlement agreement noted that Private Bank had mortgages on several residential properties owned together and separately by Cheryl and Stephen, and that "disputes exist among the Parties with respect to various claims and issues relating to" the residential real estate, and they want to "settle any and all claims and disputes by, among and against each other under this Agreement." The agreement also noted that Cheryl filed for bankruptcy under chapter 11 on January 14, 2011, and that the bank had begun legal action against Stephen on property he owned separately and with BGLP. The settlement agreement then stated, in relevant part:

> "10) **Release of Cheryl, Stephen and BGLP**. Except as expressly set forth in this Agreement, the Bank, and each of its respective successors, affiliates, assigns, shareholders/members, directors, officers, agents, servants, employees, heirs, executors, administrators and assigns, does hereby forever release and discharge Cheryl, Stephen, and BGLP, and their respective parents, successors, affiliates, assigns, directors, officers, agents, servants, and employees from any and all claims, demands, actions, causes of action, suits, costs, damages, expenses and liabilities of every kind, character and description, either direct or consequential, at law or in equity, which they may now, may have had at any time heretofore, or in any manner whatsoever, provided, however, that such released claims shall not include any claims asserted by any Party arising solely out of any obligation specifically set forth in this Agreement.

>                      * * *

> 26) **Parties in Interest**. Nothing herein shall be construed to be to the benefit of any third party, nor is it intended that any provision shall be [for] the benefit of any third party."

¶ 8       The settlement agreement does not specifically mention the note or the amended note with Emmerman or Investors and does not mention Emmerman or Investors by name.

¶ 9       On August 16, 2012, Private Bank filed a two-count complaint in the circuit court of Cook County alleging breach of contract claim against Emmerman and Investors, as obligors of the loan (count I), and against EMS, as guarantor of the loan (count II). Defendants filed an answer admitting the note was in default and raising as an affirmative defense that Private Bank's unconditional release of Bancroft's liability under the note, without a reservation of rights, also released Emmerman and Investors from liability under the note and EMS from liability under the guaranty.

¶ 10       Private Bank moved to strike EMS's affirmative defense as to its liability on the guaranty, which the trial court granted, with prejudice. Private Bank then moved for summary judgment. Defendants filed a combined motion for summary judgment and a response to Private Bank's motion for summary judgment. Among the exhibits attached to Private Bank's motion was an affidavit from Kimberly Kourelis, a Private Bank managing director, stating that the bank's settlement agreement with Bancroft was unrelated to the note, amended note, and guaranty and was not intended to apply to Emmerman, Investors, or EMS.

Private Bank also attached deposition testimony from Emmerman stating that at the time the settlement agreement was executed, he had no knowledge of it and had not been asked to review it at any time. Emmerman also stated that after the loan matured in January 2012, he spoke with Alan Fine, another Private Bank managing director, about how Emmerman was going to repay the loan. Emmerman stated, "I was looking for a modification of the loan. None of that was forthcoming. They were interested in me paying or else."

¶ 11    On May 1, 2014, the trial court granted Private Bank's motion for summary judgment and denied defendants' motion. The court also entered judgment in Private Bank's favor in the amount of $1,704,718.79, which included the principal due on the loan, plus interest, attorney fees, and costs. The court found that defendants' liability under the note was joint and several, and thus, "a plaintiff is entitled to pursue distinct remedies upon the same instrument, treating it as a joint contract and as a several contract, until satisfaction is fully obtained. [Citation.]" Further, citing *Diamond Headache Clinic, Ltd. v. Loeber*, 172 Ill. App. 3d 364, 369 (1988), the trial court stated that joint and several liability permits the plaintiff to sue until payment in full from one or more of the defendants, with the limitation that the plaintiff may not collect more than what is owed by the defendants jointly. This prevents multiple recoveries for a single injury.

¶ 12    Addressing the settlement agreement, the court stated, "an obligor is not released when it is apparent from the circumstances that the settling parties did not intend the release of one to act as a release of all." The court found that the evidence, including Kourelis's affidavit, Emmerman's deposition testimony, and a third-party beneficiary clause in the release ("[n]othing herein shall be construed to be to the benefit of any third party") demonstrates that Private Bank always intended to enforce its rights against defendants.

¶ 13                                  ANALYSIS

¶ 14    Defendants' primary contention is that the trial court erred in entering summary judgment and a monetary judgment in Private Bank's favor, because the release of one joint and several co-obligor releases all other joint and several co-obligors absent a reservation of rights. Defendants also contend the trial court erred by: (i) referring to Bancroft as a guarantor rather than as a co-obligor and (ii) relying on section 294 of the Restatement (Second) of Contracts (Restatement (Second) of Contracts § 294 (1981)), which has not been enacted in Illinois. Defendants ask us to reverse the summary judgment in plaintiff's favor and enter summary judgment in their favor and vacate the monetary judgment.

¶ 15    Summary judgment is proper where the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the nonmoving party, reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review the entry of summary judgment *de novo* and may affirm on any ground appearing in the record. *Id.*

¶ 16                  Release of a Joint and Several Co-Obligor

¶ 17    Defendants primarily argue that the trial court erred in finding that Private Bank's release of Cheryl Bancroft did not release defendants from liability on the note. But we first address defendants' contention that the trial court erred when, in its order, it referred to Cheryl Bancroft, who is not a party, as a guarantor rather than as a co-obligor on the note. We agree

the trial court erred when it stated that "Cheryl Bancroft also guaranteed the obligations brought about by the loan documents" and "Private Bank *** released Cheryl Bancroft from any obligations she had arising under the guaranty." But the court then proceeded to whether Private Bank's release of Bancroft also released defendants, who were jointly and severally liable under the note or whether they were not released because the circumstances indicated that Private Bank did not intend for their release of Bancroft to also release defendants. Thus, because in making its decision the trial court addressed whether joint and several co-obligors on a note are released after release of one of a co-obligor, any error in describing Bancroft as a guarantor rather than a co-obligor did not affect the outcome and was harmless.

¶ 18       Turning to the liabilities of joint and several co-obligors on a loan, under Illinois law, a joint and several contract has been deemed "equivalent to independent contracts, founded upon one consideration, for performance severally, and also for performance jointly, and distinct remedies upon the same instrument, treating it as a joint contract and as a several contract, may be pursued until satisfaction is fully obtained." *Moore v. Rogers*, 19 Ill. 347, 348 (1857); see also *People v. Harrison*, 82 Ill. 84, 86 (1876) ("Contracts which are joint and several may be regarded as furnishing two distinct remedies: one by a joint action against all the obligors, the other by a several action against each."); 735 ILCS 5/2-410 (West 2012) ("All parties to a joint obligation, including a partnership obligation, may be sued jointly, or separate actions may be brought against one or more of them. A judgment against fewer than all the parties to a joint or partnership obligation does not bar an action against those not included in the judgment or not sued. Nothing herein permits more than one satisfaction."). Each of the obligors "may be liable for the entire damages resulting from the failure to perform." *Brokerage Resources, Inc. v. Jordan*, 80 Ill. App. 3d 605, 608 (1980).

¶ 19       Despite the general rule holding joint and several co-obligors separately liable, a release of one co-obligor *may* also release the other co-obligor. Under Illinois common law, the full release of one co-obligor released all "even if the release contained an express reservation of rights against the others." *Porter v. Ford Motor Co.*, 96 Ill. 2d 190, 193 (1983). As observed by the supreme court in *Porter*, it "rejected the strict common law rule 'in favor of the more reasonable rule, that where the release of one of several obligors shows upon its face, and in connection with the surrounding circumstances, that it was the intention of the parties not to release the co-obligors,' " the agreement shall be construed as a covenant not to sue, rather than a release. (Emphasis omitted.) *Id*. at 194-95 (quoting *Parmelee v. Lawrence*, 44 Ill. 405, 413-14 (1867)). In other words, the entry of one co-obligor into an unconditional release will release all co-obligors except when a contrary intent appears from the face of the document with the release. *Id*.; see also *Cherney v. Soldinger*, 299 Ill. App. 3d 1066, 1070 (1998).

¶ 20       In *Parmelee* four partners, Bigelow, Parmelee, Gage, and Johnson, borrowed $50,000 from Lawrence and conveyed real estate to Lawrence as security. The partners agreed to repay the loan in five annual installments with 10% interest, after which Lawrence agreed to reconvey the property to the partners. *Parmelee*, 44 Ill. at 406-07. After they stopped repaying the loan, the partners argued that a release executed in favor of one of the partners, Bigelow, served to release them all. *Id*. at 408. The release read, in relevant part:

> " 'I release and discharge *** Bigelow, his property and estate, from all claims on account of the same.
>
> If the property mentioned in the above articles has to be sold under any order of the court at Chicago, the interest of said Bigelow in it is to be protected according to

this settlement. Nothing herein shall in anywise affect my rights or demand against said Parmelee, Gage or Johnson, or their interest in said property.' " *Id.*

¶ 21 In examining the effect of the release on the liability of Bigelow's partners, the Illinois Supreme Court held that a "release, like every other written instrument, must be so construed as to carry out the intention of the parties. This intention is to be sought in the language of the instrument itself when read in light of the circumstance which surrounded the transaction." *Id.* at 410. The court further stated that "where the release of one of several obligors shows upon its face, and in connection with the surrounding circumstances, that it was the intention of the parties not to release the [co-obligors], such intention, as in the case of other written contracts, shall be carried out, and to that end the instrument shall be construed as a covenant not to sue." *Id.* at 414.

¶ 22 Accordingly, a court must assess whether the parties intended the agreement to serve as an "absolute and unconditional" release of the co-obligor executing the agreement. *Id.* The purpose of this doctrine is to prevent a claimant from receiving multiple recoveries for a single claim (*Diamond Headache Clinic*, 172 Ill. App. 3d at 369), and not to release a co-obligor when a claim has been only partially settled if the claimant's intent is not to release the other obligor but to hold him or her responsible for the balance (*id.*).

¶ 23 In ruling in Lawrence's favor, the *Parmelee* court had "no hesitation or doubt" finding that Lawrence executed the release "for the purpose of saving Bigelow from further legal liability so far, and only so far, as this could be done without affecting [his claim] against the [co-obligors]." *Parmelee*, 44 Ill. at 411. The court noted the release contained an express reservation of rights and that Lawrence had refused to sign other releases Bigelow presented to him lacking a reservation of rights out of concern that it might jeopardize his rights against the co-obligors. *Id.*

¶ 24 To determine Private Bank's intent in releasing Bancroft from liability, we examine the language of the release and the circumstances leading to its execution. In finding that Private Bank's release of Bancroft did not release defendants from liability under the note, the trial court cited the affidavit of Kimberly Kourelis of Private Bank, the deposition testimony of Herbert Emmerman, and the third-party beneficiary language of the settlement agreement ("Nothing herein shall be construed to be to the benefit of any third party, nor is it intended that any provision shall be [for] the benefit of any third party.").

¶ 25 Addressing the last item first, defendants assert that the trial court erred in relying on the third-party beneficiary language in paragraph 26 of the settlement agreement as evidence that Private Bank reserved its rights against Emmerman and Investors. Defendants note that in *Holland v. United States*, 621 F.3d 1366 (Fed. Cir. 2010), a case from the Federal Circuit Court of Appeals interpreting Illinois law, the court stated that "the general 'Third Party Beneficiaries' clause in the Settlement Agreement is not sufficient to show that the parties intended the release to be less than an absolute release of the FDIC as a manager of the FRF and thus, under Illinois law, fails to establish that the agreement should be construed as merely a covenant not to sue the FDIC as manager of the FRF." *Id.* at 1381. Defendants contend that because the third-party beneficiary clause is not sufficient to reserve rights against them and the settlement agreement contained no reservation of rights clause, the agreement contains no evidence that Private Bank intended to reserve its rights against Emmerman and Investors.

¶ 26    State courts are not bound to follow decisions of the federal district courts or circuit courts of appeal. *Hinterlong v. Baldwin*, 308 Ill. App. 3d 441, 452 (1999) (except for the United States Supreme Court, federal courts exercise no appellate jurisdiction over state courts and their opinions are not binding on state courts). Federal decisions may, however, be considered persuasive authority. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 30. In the absence of Illinois precedent on whether a general third-party beneficiary clause shows an intent to reserve rights against other co-obligors, we may be inclined to follow *Holland* and find that the third-party beneficiary clause in the release failed to expressly reserve Private Bank's rights against defendants. But we need not address that issue, because even absent that clause, the remainder of the settlement agreement, the circumstances surrounding its execution, and the stated intent and understanding of both Private Bank and Emmerman as to the effect of the release establish that Private Bank did not intend to release Emmerman or Investors from liability under the note.

¶ 27    We start with the fact that the release refers to mortgages on several parcels of residential real estate Cheryl Bancroft and her husband own individually, together, and through BGLP. Private Bank and the Bancrofts entered into the settlement 10 months after Cheryl Bancroft filed for chapter 11 bankruptcy and while Private Bank had pending litigation against Stephen Bancroft and BGLP involving property referred to in the release. The note, the amended note, or the co-obligors here are not mentioned at all. In her affidavit, Kourelis states that the settlement agreement was unrelated to the note, the amended note, or the obligations of Emmerman, Investors, and EMS and was not intended to apply to them. Emmerman's deposition testimony likewise indicates he did not think that in releasing Bancroft, Private Bank also intended to release him or Investors from their obligations under the note.

¶ 28    Emmerman testified that he was unaware of the release just before and after it was signed, that when the note became due in January 2012, three months after the release was executed, he spoke with Alan Fine from Private Bank about a modification but none was forthcoming and that he knew that the bank was "interested in me paying or else." Private Bank's actions in attempting to obtain payment from Emmerman and Investors, as the only remaining liable co-obligors, show it intended to continue to hold them liable despite the release of Bancroft.

¶ 29    Further, we reject defendants' contention that the mere absence of a reservation of rights clause in the note and amended note means that Private Bank did not intend to reserve its rights against defendants. Specifically, defendants assert that because all other notes and loan modifications they or Bancroft executed included a reservation of rights clause and because Private Bank almost always included that provision in their notes and loan agreements, the absence of that clause in this note and amended note is evidence that Private Bank did not intend to preserve its rights against co-obligors. As noted, Illinois case law holds that it is the intent of the parties to the release and the language of the release that controls its scope and effect. Defendants offer no cases to support their argument that the language of the note alone controls whether a later release of one co-obligor also releases the other co-obligors.

¶ 30    Thus, even in the absence of an express reservation of rights in the release, the circumstances, which we must consider, show that Private Bank did not intend to release defendants from their liability under the note when they entered into a settlement agreement with defendants' co-obligor, Cheryl Bancroft. Therefore, the trial court did not err in granting

Private Bank's motion for summary judgment and entering a judgment in the bank's favor.

¶ 31                         Section 294 of Restatement of Contracts

¶ 32        Defendants contend the trial court erred in relying on section 294 of the Restatement (Second) of Contracts (Restatement (Second) of Contracts § 294 (1981)), because it has not been enacted as law in Illinois. Nothing in the record or the order granting summary judgment shows that the trial court relied on the Restatement in reaching its decision. Defendants note that in its order, the trial court cited *El Funding Partnership v. Voegel*, 2012 IL App (1st) 113712-U. In *El Funding*, the appellate court found that the trial court's reliance on section 294 of the Restatement (Second) of Contracts was irrelevant, because Illinois courts have modified the common law rule to find that intent is the determining factor in whether the release of a co-obligor releases the remaining obligors. *El Funding*, 2012 IL App (1st) 113712-U, ¶ 27. This does not amount to evidence that the trial court improperly relied on the Restatement (Second) of Contracts in reaching its decision.

¶ 33                                   CONCLUSION

¶ 34        The trial court did not err in granting plaintiff's motion for summary judgment or entering judgment in plaintiff's favor.

¶ 35        Affirmed.