2020 IL App (1st) 192450
No. 1-19-2450
Opinion filed November 23, 2020

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| FIRST AMERICAN BANK, an Illinois Banking Corporation, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) ) | No. 17 CH 14974 |
| POPLAR CREEK, LLC, an Illinois Limited Liability Company; GEORGE A. MOSER, an Individual; DOUGLAS C. ALTENBERGER, an Individual; GEORGE M. MOSER, an Individual; MARTIN R. WALSH, an Individual; THE STONEGATE CONFERENCE AND BANQUET CENTRE, LLC, an Illinois Limited Liability Company; and UNKNOWN OWNERS AND NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) ) | Honorable Freddrenna M. Lyle, Judge, presiding. |
| Defendants | ) ) | |
| (George A. Moser, Douglas C. Altenberger, and George M. Moser, Defendants-Appellants). | ) ) | |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Walker and Justice Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1     Poplar Creek, LLC (Poplar Creek), obtained an $8.1 million loan from First American

Bank (First American) to develop a conference and banquet center in Hoffman Estates. A mortgage

on the property and a security interest in a tax increment financing note (TIF Note) secured the loan. The managers of Poplar Creek guaranteed 10% of the principal balance as well as the interest and real estate taxes. After the sixth modification of the loan, Poplar Creek defaulted. First American filed a verified complaint to foreclose the mortgage naming Poplar Creek and the guarantors as defendants. After Poplar Creek filed for bankruptcy, First American moved for summary judgment against the guarantors. First American supported the motion with an affidavit from its senior vice president detailing the amounts owed as of the sixth modification. The guarantors moved to strike the affidavit on the grounds that it should have addressed the history of the loan dating back to inception. The trial court denied the motion to strike and granted First American's motion for summary judgment.

¶ 2     The trial court entered written orders against each of the guarantors, which included 10% of the outstanding principal and real estate taxes First American had paid, plus accrued interest, attorney's fees, and costs. The guarantors filed a motion to reconsider, arguing that an order in the bankruptcy case finding that First American now owned the TIF Note created a material issue of fact as to its financial value. Finding the order did not create a question of fact as to the guarantors' liability, the trial court denied the motion to reconsider.

¶ 3     The guarantors contend the trial court erred by (i) granting summary judgment when First American's affidavit was insufficient as a matter of law as it addressed only the period after the sixth modification rather than the entire loan history, (ii) awarding First American four times the amount of real estate taxes by failing to limit the guarantors' liability as joint and several, and (iii) denying the guarantors' motion for reconsideration.

¶ 4     We affirm. First American's affidavit provided a sufficient basis for summary judgment to recover from the guarantors on the sixth modification of the loan, and the trial court did not err in

denying the guarantors' motion to reconsider because the bankruptcy order did not create a question of fact as to the guarantors' liability. Further, the guaranty provides that the guarantors are jointly and severally liable, so First American may recover once the amount it paid in real estate taxes from one or more of the guarantors.

¶ 5            Background

¶ 6     First American made a commercial property loan to Poplar Creek in 2004. Securing the loan was a mortgage on the property and the limited guaranties of George A. Moser, Douglas C. Altenberger, George M. Moser, and Martin M. Walsh (Walsh is not a party to this appeal; appellants will be referred to collectively as "guarantors."). Each guaranty limited the guarantor's obligations "to the amount of ten percent (10.00%) of the outstanding Obligations" plus interest, expenses (including reasonable attorney's fees) the bank incurred in collecting on the loan and the guaranty, and "all amounts reasonably necessary to protect, preserve and maintain the Premises (as defined in the Loan Agreement), including without limitation amounts paid to other lien holders or governmental entities."

¶ 7     The parties modified the loan six times between 2004 and 2017 and revised the guaranties once, on November 1, 2009. In the second loan modification Poplar Creek assigned to First American as additional collateral a security interest in a TIF Note from the Village of Hoffman Estates, which provided annual interest payments of several hundred thousand dollars. The sixth and most recent modification on July 7, 2017, extended the loan's maturity date to September 1, 2017.

¶ 8     Poplar Creek defaulted after the sixth modification matured. First American filed a verified complaint to foreclose its mortgage. First American attached to its complaint copies of the original loan documents and all six loan modifications, as well as the original and revised guaranties.

Counts IV through VII of the verified complaint sought to recover amounts due and owing under the four individual guaranties. Poplar Creek declared bankruptcy and First American filed a motion for partial summary judgment against the four guarantors. The affidavit of Maureen Prochenski, a senior vice president at First American, supported the motion. The guarantors successfully moved to strike Prochenski's affidavit, and First American withdrew its motion for partial summary judgment.

¶ 9    The guarantors filed their verified answers, and First American again moved for partial summary judgment. Once more, Prochenski's affidavit supported First American's motion. In her affidavit, Prochenski stated she had personal knowledge of the facts and allegations in First American's verified complaint and had signed the verification in her capacity as a First American senior vice president. She also signed the sixth loan modification and had personal knowledge and familiarity with the amounts due and owing under the loan documents based on her review of the attached the loan history and loan balance statement.

¶ 10    The loan history noted that the loan originated on February 7, 2004, that the current term of the loan, as modified, was two months, and detailed the loan history from January 1, 2017, to April 15, 2019. The loan balance statement as of April 16, 2019, showed a principal balance of $6,633,363.44 plus $1,000,842.44 in interest for a total due of $7,634,195.88. Prochenski stated that the balance included $246,361.28 in real estate taxes, which First American made advances to pay on the property after the loan matured. Also, after the loan matured, First American received three payments toward the loan, which it applied to the balance, including a tax increment financing check for $231,807.78 from the Village of Hoffman Estates. First American used the "Jack Henry/Silverlake" computer software program, the recognized standard in the banking

industry, to record and track loan payments and to generate the loan history and loan balance statement, and both documents were accurate.

¶ 11    While the summary judgment motion was pending, Poplar Creek asked the court in its bankruptcy case to authorize the Village of Hoffman Estates to distribute to Poplar Creek accrued interest under the TIF Note. First American objected—Poplar Creek had pledged the TIF Note as security for its loan, and after Poplar Creek's default, the Bank exercised its rights and had become the registered owner of the TIF Note, entitling it to all future distributions of interest. The bankruptcy court agreed, finding First American the holder and registered owner of the TIF Note and directing the Village to make all payments due under it to First American.

¶ 12                          Summary Judgment Hearing

¶ 13    The guarantors did not file a response to First American's motion for summary judgment. Instead, they moved to strike Prochenski's affidavit because it should have included the loan history from the inception of the loan. They also contested the affidavit's adequacy based on its failure to provide (i) evidence that loan transactions were recorded at or near the time they were made for the entire history of the loan and (ii) evidence regarding the computer software First American used to record disbursements and payments dating back to 2004. First American replied, in part, that the guarantors waived any objections by failing to file a response.

¶ 14    After argument, the trial court denied the guarantor's motion to strike. The court found Prochenski's affidavit sufficient because each loan modification became a new transaction and the "sum and substance of the prior dealings was incorporated into the [the 2017] loan modification."

¶ 15    As to the motion for summary judgment, the trial court found that the guarantors' motion to strike Prochenski's affidavit constituted a timely response. During argument, the guarantors asserted that summary judgment should be denied because the bankruptcy judge's determinations

regarding the TIF Note created a genuine issue of material fact. The guarantors argued that if First American owns the TIF Note, as the bankruptcy court held, the TIF's value should be a credit and a payment against the loan, which would mean the guarantors are not in default.

¶ 16    The trial court disagreed. The trial court denied the guarantors' motion to strike Prochenski's affidavit, granted First American's motion for summary judgment as to counts IV-VII of its complaint, entered judgment in favor of First American against each of the guarantors separately for $905,061.49 (which included 10% of the outstanding principle or $658,700.21 plus $246,361.28 in real estate taxes First American paid), as well as $1,000,832.44 in accrued interest, attorney's fees, and costs.

¶ 17    The guarantors moved to reconsider. The trial court (i) clarified that the judgment amounts for the accrued interest involved a single satisfaction among the judgment debtors, (ii) denied the guarantors' motion for reconsideration, and (iii) found no just reason for delaying enforcement or appeal of its summary judgment order under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 18                                            Analysis

¶ 19                                     Standard of Review

¶ 20    Summary judgment applies where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). The court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different

inferences from the undisputed facts." *Id.* Summary judgment should be granted where the right of the movant is clear and free from doubt. *Id.* We review the trial court's grant of summary judgment *de novo*. *Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14.

¶ 21                                    Prochenski Affidavit

¶ 22    The guarantors contend the Prochenski affidavit was not competent evidence of either default or the purported amounts due and owing under the loan. Specifically, they contend that because the Prochenski affidavit addresses only the loan after the sixth modification, it lacks (i) a complete loan history, (ii) evidence that loan payments were properly recorded during the entire loan history, or (iii) evidence of the computer software used to record disbursements and payments for the entire loan history. In short, the guarantors contend the "primary defect of the Prochenski Affidavit is that it does not provide any information including loan history and Plaintiff's record-keeping practices for the first 13 years of the loan."

¶ 23    In summary judgment proceedings, affidavits show whether the issues raised are genuine and whether each party has competent evidence to support its position. *Harris Bank Hinsdale, N.A. v. Caliendo*, 235 Ill. App. 3d 1013, 1025 (1992). Affidavits substitute for trial testimony and have to meet the same requirements as competent testimony. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 338 (2002). Evidence that would be inadmissible at trial cannot be considered in a summary judgment proceeding. *Harris Bank*, 235 Ill. App. 3d at 1025.

¶ 24    An affidavit that does not strictly comply with Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) must be stricken. *Robidoux*, 201 Ill. 2d at 335-36. When an affidavit contains unsupported assertions, opinions, or conclusory statements that do not comply with Rule 191(a), the court will not consider the affidavit. *Geary v. Telular Corp.*, 341 Ill. App. 3d 694, 699 (2003).

¶ 25    The guarantors acknowledge that for the period from January 2017 to April 2019 (the duration of the sixth loan modification), Prochenski's affidavit satisfies the requirements of Rule 191(a). Instead, the guarantors contend that because Prochenski failed to attach the entire loan history to her affidavit, it violates Rule 191(a) and does not support her testimony that the loan was in default and the amounts owed. We disagree.

¶ 26    A mortgage is a contract between the immediate parties. *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 111 (1993). The law regards a modified contract as creating a new single contract consisting of the terms of the earlier contract the parties have not changed in addition to the new terms. *Schwinder v. Austin Bank of Chicago*, 348 Ill. App. 3d 461, 469 (2004) (citing *Downers Grove Associates v. Red Robin International, Inc.*, 151 Ill. App. 3d 310, 318 (1986)). A lawsuit to enforce a modified or amended contract must be brought on the modified agreement, not on the original agreement. *Id.* (citing *Hulcher v. Adcock*, 25 Ill. App. 2d 255 (1960) (abstract of opinion)).

¶ 27    The sixth loan modification states: "The Revised Note and the Revised Loan Documents shall remain in full force and effect as originally executed and delivered by the parties, except as expressly modified and amended herein ***. Borrower and Guarantors hereby confirm and reaffirm all of their obligations under the Revised Note and the Revised Loan Documents, as modified and amended herein, and confirm and reaffirm that the Revised Loan Documents secure the Revised Note."

¶ 28    The loan modification constitutes a new transaction incorporating the parties' prior dealings, eliminating the need for First American's affidavit to provide the history of the loan or evidence of the computer software First American used to record disbursements and payments that preceded the modification. Prochenski's affidavit incorporates the governing loan document and

attaches the loan history and loan balance statement which reflect the amounts due under the sixth loan modification. Prior loan documents are irrelevant to enforce the modified loan agreement.

¶ 29    The guarantors cite no authority to refute the trial court's finding that Prochenski's affidavit provided sufficient grounds to grant summary judgment. They rely largely on *Robidoux*, where an affidavit by the plaintiff's expert medical witness failed to attach medical records or other materials on which the expert relied for his opinion. *Robidoux*, 201 Ill. 2d at 329-31. Our supreme court held that Rule 191(a)'s requirement of attaching papers on which the affiant relies as "not a mere technical requirement" but "inextricably linked to the provisions requiring specific factual support in the affidavit itself." *Id.* at 344. Thus, *Robidoux* upheld the striking of the affidavit and granting summary judgment to defendants. *Id.* at 345.

¶ 30    Likewise, in *Preze v. Borden Chemical, Inc.*, 336 Ill. App. 3d 52, 57 (2002), plaintiff's expert failed to attach the documents on which he relied in his affidavit to support his opinion.

¶ 31    By contrast, Prochenski's affidavit included the loan history and loan balance statement that form the basis for First American's claims under the sixth loan modification. Thus, *Robidoux* and *Preze* are inapposite. Based on the contents of Prochenski's affidavit, the attached documents, and the process First American used to calculate the balance due, the trial court properly granted summary judgment against the guarantors.

¶ 32                              Real Estate Taxes

¶ 33    The guarantors contend the trial court erred by entering a judgment of $905,061.49 against each of them. They assert that the amount of the judgments is the sum of $658,700.21 for the 10% principal due on the loan plus the full amount of the $246,361.28 First American paid in real estate property taxes. The guarantors argue that the legal effect of the judgment awards First American a quadruple recovery for the real estate property taxes. They note that, in denying the motion to

reconsider, the trial court clarified that the judgment amounts for accrued interest meant a single satisfaction among the judgment debtors but made no similar clarification as to the real estate taxes. Moreover, they contend the judgment order fails to expressly state that the judgment amount is joint and several, potentially allowing First American to seize up to four times the judgment amount should the bank recover from each guarantor.

¶ 34    Under the plain terms of each guaranty, the guarantors agreed to be liable for the full amount of the loan if a default occurred (subject to a 10% cap on principal). Specifically, the guaranty states, "Each of the undersigned agrees that, in the event of the death, incompetency, dissolution or insolvency of the Borrower or such undersigned, or the inability of the Borrower or such undersigned to pay debts as they mature *** [the] undersigned will pay to the Bank forthwith the full amount that would be payable hereunder by such undersigned if all Obligations were then due and payable." The guaranties also provide, "If more than one party shall execute this Guaranty, the term 'undersigned' as used herein shall mean all parties executing this Guaranty and each of them, and all such parties shall be *jointly and severally obligated* hereunder." (Emphasis added.)

¶ 35    "[A] joint and several contract has been deemed equivalent to independent contracts, founded upon one consideration, for performance severally, and also for performance jointly, and distinct remedies upon the same instrument, treating it as a joint contract and as a several contract, may be pursued until satisfaction is fully obtained." (Internal quotation marks omitted.) *Private Bank & Trust Co. v. EMS Investors, LLC*, 2015 IL App (1st) 141689, ¶ 18; see also 735 ILCS 5/2-410 (West 2018) ("All parties to a joint obligation *** may be sued jointly, or separate actions may be brought against one or more of them. *** Nothing herein permits more than one satisfaction."). "If two or more parties to a contract owe a joint and several duty of performance to another party to the contract and the duty is not performed, each may be liable for the entire

damages resulting from the failure to perform." *Brokerage Resources, Inc. v. Jordan*, 80 Ill. App. 3d 605, 608 (1980).

¶ 36    The guarantors agreed to be jointly and severally liable for the guaranty. The judgments against each of them permits First American to seek full satisfaction of the amounts due, including accrued interest and real estate taxes, against any of them. See *Private Bank & Trust Co.*, 2015 IL App (1st) 141689, ¶ 18. But, as First American's counsel conceded during oral argument, if First American recovers the full amount against one guarantor, it may not recover against the others. Thus, the order is proper.

¶ 37                                          Motion to Reconsider

¶ 38    Lastly, the guarantors assert the trial court erred in denying its motion to reconsider. The guarantors argue that the Poplar Creek bankruptcy case's finding First American as the owner of the TIF Note and entitled to payments on it created a question of fact as to how much the guarantors owed First American. According to the guarantors, failing to give the guarantors credit for the amount of the TIF Note amounted to "nothing more than an unwarranted gift to First American."

¶ 39    In cases tried without a jury, any party may, within 30 days after the entry of the judgment, file a motion to reconsider. 735 ILCS 5/2-1203 (West 2018). A motion to reconsider brings to the trial court's attention newly discovered evidence not available at the time of the first hearing, changes in the law, or errors in the application of existing law to the facts. *River Village I, LLC v. Central Insurance Cos.*, 396 Ill. App. 3d 480, 492 (2009).

¶ 40    The guarantor's motion to reconsider was not based on new evidence, fact, or legal theories. Rather, it contended that the trial court erred in finding that the bankruptcy court's order regarding the TIF Note did not create a material question of fact. Our review is *de novo*. *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 80.

¶ 41　The trial court entered the order denying the motion to reconsider after hearing argument from the parties. Its order does not state the grounds for denying the motion. Because the record does not include a transcript of that hearing, the rule in *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984), applies. Under *Foutch*, where the record is incomplete, we must "presume[ ] that the order entered by the trial court was in conformity with law and had a sufficient factual basis" and must resolve against the appellant "[a]ny doubts which may arise from the incompleteness of the record." *Foutch*, 99 Ill. 2d at 392. This is because the "appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error" *Id.* at 391-92.

¶ 42　We affirm because the guarantors had the burden to present a sufficiently complete record of the proceedings to support the claimed error, and in the absence of that record, we presume the order entered conformed with law and had a sufficient factual basis. *Id.* at 391-92.

¶ 43　Moreover, as the trial court concluded, the order in the bankruptcy proceeding did not create a question of fact as to the guarantors' liability. In any event, the guarantors are liable to First American under their guaranty. The trial court did not err in denying the motion to reconsider.

¶ 44　Affirmed.

**No. 1-19-2450**

| | |
|---|---|
| **Cite as:** | *First American Bank v. Poplar Creek, LLC*, 2020 IL App (1st) 192450 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CH-14974; the Hon. Freddrenna M. Lyle, Judge, presiding. |
| **Attorneys for Appellant:** | Cornelius P. Brown, Amy E. Daleo, and Scott M. Kaplan, of Cohon Raizes & Regal LLP, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Eric P. Sparks, Mark D. Brookstein, and Justin W. Hanson, of Gould & Ratner LLP, of Chicago, for appellee. |