2025 IL App (1st) 241237

FIFTH DIVISION
Filing Date September 19, 2025

No. 1-24-1237

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| U.S. BANK TRUST, N.A., as Trustee for LSF9 Master Participation Trust, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 15 CH 12098 |
| CELESTINE E. WINSTON, a/k/a Celestine Winston; DERICK E. WINSTON, a/k/a Derrick Winston; NCO PORTFOLIO MANAGEMENT, INC.; MIDLAND FUNDING LLC; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) | The Honorable Marian E. Perkins, Judge, Presiding. |
| Defendants | ) ) | |
| (Celestine E. Winston and Derick E. Winston, Defendants and Counterplaintiffs-Appellants). . | ) ) ) | |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices Mikva and Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    In this mortgage foreclosure action, defendants Celestine E. Winston and Derick E. Winston (Celestine and Derick, collectively defendants) appeal following the circuit court of Cook County's entry of an order approving the sale of the property in question in favor of plaintiff U.S. Bank N.A., as trustee for LSF9 Master Participation Trust (U.S. Bank). On appeal, defendants contend that the circuit court (1) erred in granting summary judgment and judgment of foreclosure and sale in favor of U.S. Bank where its affidavit of amounts due and owing failed to meet the standards of Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) and Rule 236 (eff. Aug. 1, 1992), and (2) abused its discretion in denying the defendants' emergency motion to stay the sale and in granting U.S. Bank's motion for an order approving report of sale and distribution where it did not demonstrate the proper standing to sue. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    Prior to reciting the facts in this matter, we note that the litigation before the circuit court was quite extensive, proceeding over a nine-year period. Therefore, we will only focus only on those facts pertinent to this appeal. We note at the outset that defendants have not filed any report of proceedings or bystander's reports; only the common law record was filed.

¶ 4                        A. Proceedings on the Foreclosure Complaint

¶ 5    On February 16, 2001, Celestine and Derick obtained a mortgage loan with Beneficial Illinois, Inc., d/b/a Beneficial Mortgage Company of Illinois (Beneficial) on the property located at 22119 Hillside Drive in Richton Park, Illinois. That mortgage was memorialized by a loan repayment and security agreement and a mortgage; the mortgage was recorded on February 20, 2001.

¶ 6        On August 12, 2015, Beneficial Financial I, Inc., the successor by merger to Beneficial (Beneficial II),[1] filed its complaint to foreclose the mortgage against Celestine, Derick, NCO Portfolio Management, Inc., and Midland Funding LLC pursuant to the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1101 *et seq.* (West 2014)).[2] Beneficial II alleged that it was the mortgagee under section 15-1208 (*id.* § 15-1208) of the Foreclosure Law and that Celestine and Derick were in default for failing to make payments pursuant to the mortgage as of July 22, 2014. Attached to the complaint were copies of the mortgage and note, which indicated that the original lender was Beneficial I.

¶ 7        Derick filed his appearance and a section 2-619.1 (*id.* § 2-619.1) motion to dismiss under the Code of Civil Procedure on November 19, 2015. In the motion to dismiss, Derick argues that the foreclosure complaint failed to sufficiently allege that Beneficial II was the *bona fide* owner of the loan repayment and security agreement. On March 4, 2016, Beneficial II responded that Derick's motion deliberately omitted language from section 3-104 of the Uniform Commercial Code (UCC) (810 ILCS 5/3-104 (West 2014)) that allowed each of the undertakings that Derick asserted would destroy the negotiability of the loan repayment and security agreement. Derick subsequently responded by reiterating his position about the missing language in the complaint on April 21, 2015. The circuit court denied Derick's motion to dismiss on May 2, 2016, "for the reasons stated by the court," and specifically found that the complaint sufficiently alleged that the note was a negotiable instrument.

---

[1]The record contains copies of the merger documents, which indicate that the merger occurred on September 30, 2009, in Delaware.

[2]NCO Portfolio Management, Inc., and Midland Funding LLC were creditors that had previously recorded memorandums of judgment against Celestine.

¶ 8        Subsequently, on March 8, 2016, Beneficial II filed a motion to substitute party. According to the motion, Beneficial II assigned its interest to U.S. Bank on February 10, 2016. A copy of the assignment was attached to the motion. The circuit court granted the motion on March 31, 2016.

¶ 9        After several unsuccessful attempts and methods to serve Celestine, including service by publication, Celestine filed a section 2-619(a) (735 ILCS 5/2-619(a) (West 2016)) motion to dismiss under the Code of Civil Procedure on May 27, 2016, arguing that U.S. Bank, a nonresident of Illinois, failed to file a security for costs prior to the commencement of the foreclosure action pursuant to section 5-101 of the Code of Civil Procedure (*id.* § 5-101). This motion was filed by the same counsel representing Derick.

¶ 10        Meanwhile, Derick filed his answer and affirmative defenses to the foreclosure complaint on May 31, 2016. He asserted that U.S. Bank was not the holder of the note, the mortgage was void against public policy, U.S. Bank had unclean hands, the lender failed to provide the borrowers with counseling prior to initiating the foreclosure proceedings and failed to send a grace period notice. Derick admitted the allegations that the attachments of the complaint that the mortgage and note attached to the complaint were true copies of those documents.

¶ 11        Celestine refiled and re-noticed her motion to dismiss on June 6, 2016, which was denied as moot on September 8, 2016. She later filed her appearance and an identical answer and affirmative defenses as Derick on October 6, 2016.

¶ 12        On November 22, 2016, Celestine and Derick filed a joint motion for leave to file their first amended answer and affirmative defenses, which the circuit court granted, and it was filed on January 17, 2017. The amended pleading now contained six affirmative defenses: U.S. Bank was not the holder of the note because the loan repayment and security agreement contained

additional obligations that nullified its status as a negotiable instrument; the mortgage was void against public policy because Beneficial was not licensed under the Illinois Residential Mortgage Act of 1987 (205 ILCS 635/1-1 *et seq.* (West 2016)); had unclean hands; failed to give defendants counseling before filing the foreclosure complaint; and failed to send a grace period notice in compliance with section 15-1502.5 of the Foreclosure Act (735 ILCS 5/15-1502.5 (West 2014)); and because the mortgage was legally enforceable because it contained the forged signatures of both defendants.

¶ 13    U.S. Bank responded with a motion to strike the affirmative defenses on January 31, 2017, contending that sections 3-104 and 3-117 of the UCC (810 ILCS 5/3-104, 3-117 (West 2016)) permitted language in the loan repayment and security agreement imposing additional instruments (*i.e.*, an arbitration rider), obligations, and conditions on the borrowers while still maintaining its status as a negotiable instrument; unclean hands was insufficiently pled and forgery was insufficiently pled because the note was notarized; defendants did not dispute the validity of the signatures on the note based on their actions subsequent to the mortgage by making 13 years' worth of mortgage payments; and living at the property for 15 years constituted a ratification of the contract. The circuit court granted defendants leave to file their amended affirmative defenses related to U.S. Bank's status as the holder of the note, unclean hands, and forgery.

¶ 14    Defendants filed their second amended answer and affirmative defenses on May 18, 2017, and filed an Illinois Supreme Court Rule 216(d) (eff. July 1, 2014) request that U.S. Bank present the alleged "original" mortgage agreement with Beneficial I that they executed on September 19, 2000, which contained their actual signatures that were allegedly different from those on the refinance mortgage documents. The circuit court granted defendants leave to re-

plead their affirmative defense of forgery and struck the remaining ones with prejudice on November 17, 2017.

¶ 15 On December 12, 2017, defendants filed their third amended answer and included counterclaims seeking declaratory judgment against U.S. Bank as well as a count to quiet title predicated on their affirmative defense of forgery. U.S. Bank's motion to dismiss the counterclaims was denied on April 19, 2018. On July 13, 2018, defendants filed a motion to dismiss the foreclosure complaint, which the circuit court denied on August 7, 2018.

¶ 16 U.S. Bank subsequently filed an amendment to the complaint seeking declaratory relief under equitable subrogation and equitable lien theories, which was granted on January 2, 2019. Defendants filed another motion to dismiss on January 30, 2019, which was denied on April 2, 2019. Defendants also filed a demand for a bill of particulars related to U.S. Bank's amendment to the complaint on April 30, 2019, which the circuit court denied on June 6, 2019. On June 12, 2019, Celestine filed a *pro se* motion for "new evidence." On June 28, 2019, defendants filed a motion for extension of time to file their answer and affirmative defenses to the amended complaint; defendants asserted that the amended complaint was barred by the statute of limitations. On October 9, 2019, the circuit court struck defendants' affirmative defenses.

¶ 17 Just over a year later, on October 19, 2020, defendants filed a motion for a handwriting expert pursuant to Illinois Supreme Court Rule 201 (eff. July 1, 2014). In support, defendants alleged that their first mortgage was with Superior Bank in October 1997 and their second mortgage was with Beneficial I in 2000. Defendants asserted that they were subsequently offered a loan to consolidate the two loans by Beneficial I, but the mortgage document attached to the foreclosure complaint had forged signatures.

¶ 18        On March 23, 2023, U.S. Bank filed a motion for partial summary judgment. On March 29, 2023, defendants filed their first amended counterclaim without leave of court, and U.S. Bank filed an objection. However, on April 3, 2023, the circuit court granted defendants leave to file their amended counterclaim retroactive to March 29, 2023. After a hearing on August 14, 2023, the circuit court granted summary judgment in favor of U.S. Bank on its claims of equitable subrogation and equitable lien. The circuit court also granted summary judgment in favor of U.S. Bank on the quiet title count of defendants' amended counterclaim.

¶ 19        On August 21, 2023, U.S. Bank filed its motion for summary judgment on its complaint for foreclosure and foreclosure of equitable lien, and on defendants' counterclaims for declaratory judgment, violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2022)), unjust enrichment, and unclean hands. Defendants also filed a motion for summary judgment on their amended counterclaims with a forensic consulting report attached on September 11, 2023. Defendant also filed a response to U.S. Bank's motion for summary judgment, alleging that the affidavit of amounts due and owing did not comply with Illinois Supreme Court Rule 113 (eff. Oct. 1, 2021) and Rule 191 (eff. Jan. 4, 2013).

¶ 20        On November 14, 2023, the circuit court entered summary judgment for U.S. Bank and an order of judgment of foreclosure and sale after a hearing. Celestine subsequently filed several *pro se* pleadings on December 5, 2023, raising allegations concerning the alleged initial missed payment, her attempts to follow up with the lender, and the resultant damages she suffered; a motion to vacate the foreclosure judgment and stop the sale regarding a December 13, 2013, payment that she made that was not properly recorded; and alleged proof of illegal foreclosure with exhibits related to her payment and transaction histories. On December 15, 2023,

defendants filed an affidavit from Kevin Kulbacki, a forensic examiner and handwriting expert, regarding his examination of the note and mortgage documents to determine whether the signatures were authentic.

¶ 21                                B. Proceedings Related to the Sale

¶ 22        On January 17, 2024, a notice of sale was issued and filed with the sale originally scheduled for February 15, 2024. However, the sale was rescheduled for February 29, 2024, and then stayed through March 7, 2024, and then rescheduled again to March 8, 2024.

¶ 23        On March 6, 2024, defendants filed an emergency motion to stay the sale alleging that U.S. Bank lacked standing, which the circuit court granted as to the March 8, 2024, sale date. The court also granted defendants' request to withdraw Celestine's *pro se* motions.

¶ 24        U.S. Bank filed its response on March 13, 2024, arguing that defendants' issues regarding standing were improperly brought at the postjudgment phase of litigation, it was not required to prove standing, and that a copy of the note was *prima facie* evidence of its ownership of the note pursuant to *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 24.

¶ 25        After a hearing, the circuit court denied defendants' motion on April 15, 2024, specifically noting its previous finding during the summary judgment ruling that U.S. Bank had standing. The judicial sale was then scheduled for April 16, 2024, when the property was sold to U.S. Bank as the highest bidder at a judicial sale. Thereafter, on April 23, 2024, U.S. Bank filed its motion to confirm the sale, which was granted on May 13, 2024. Defendants' timely notice of appeal was filed on June 10, 2024.

¶ 26                                       II. ANALYSIS

¶ 27        As noted above, defendants contend on appeal that the circuit court (1) erred in granting summary judgment and judgment of foreclosure and sale in favor of U.S. Bank where its

affidavit of amounts due and owing failed to meet the standards of Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) and Rule 236 (eff. Aug. 1, 1992), and (2) abused its discretion in denying the defendants' emergency motion to stay the sale and in granting U.S. Bank's motion for an order approving report of sale and distribution where it did not demonstrate the proper standing to sue. We shall examine each issue in turn.

¶ 28                                  A. Insufficient Affidavit

¶ 29        Defendants first contend that the circuit court erred in granting summary judgment in favor of U.S. Bank and the judgment of foreclosure and sale based on alleged inadequacies of the affidavit of amounts due and owing under Rules 191 and 236.

¶ 30        Defendants argue that the affidavit of amounts due and owing sworn to by affiant failed to establish with particularity his qualifications to testify as to the specifics of the financial information and how affiant came to be familiar with them. Defendants also maintain that U.S. Bank's summary judgment motion failed to show how the affiant developed personal knowledge of the facts of the case or was otherwise competent to testify at trial regarding any of the documents referred to in the affidavit. We disagree with defendants' characterization of the information contained in the affidavit.

¶ 31        Summary judgment applies where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). The court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *First American Bank v. Poplar Creek, LLC*, 2020 IL App (1st) 192450, ¶ 20. We review the circuit court's grant of summary judgment *de novo*. *Id.*

¶ 32    In resolving this issue, we are mindful of the legal principles that apply to summary judgment affidavits and the admission of business records. The purpose of summary judgment affidavits is to demonstrate the evidence that will be offered at trial so as to aid the trial court in its determination of whether a genuine issue of material fact exists. *Advertising Checking Bureau, Inc. v. Canal-Randolph Associates*, 101 Ill. App. 3d 140, 145 (1981). The requirements for summary judgment affidavits are governed by Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013), which provides in relevant part:

> "Affidavits in support of *** a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto."

¶ 33    Accordingly, a Rule 191(a) affidavit must not contain mere conclusions and must include the facts upon which the affiant relied. *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 22. Summary judgment affidavits take the place of courtroom testimony and should satisfy the same requirements to be deemed competent for consideration. *Id.* In ruling upon a motion for summary judgment, a circuit court may not consider evidence that would be inadmissible at trial. *Id.*

¶ 34    In addition, with respect to the admission of business records, such records may be admitted into evidence as an exception to the general rule excluding hearsay if the proponent lays a proper foundation by showing that the records were made (1) in the regular course of

business and (2) at or near the time of the event or occurrence. See Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992); Ill. R. Evid. 803(6) (eff. Mar. 24, 2022); *Avdic*, 2014 IL App (1st) 121759, ¶ 23. When the computer records at issue are computer-generated records, the proper foundation for admission is slightly more complicated. See *Avdic*, 2014 IL App (1st) 121759, ¶ 25. The proponent must establish that (1) the equipment that produced the records is recognized as standard; (2) the entries were made in the regular course of business at or near the time of the event recorded; and (3) the sources of the information, the method, and the time of preparation were such as to indicate that the records are trustworthy and to justify the admission of the records. *Id.* Any lack of personal knowledge by the maker of the business records does not affect the admissibility of the records but may affect the amount of weight to be given to the records. *Id.* ¶ 29. When an affidavit with business records has been submitted in support of, or in opposition to, a motion for summary judgment, the trial court must inherently determine, in ruling upon the motion, whether the business records would be admissible at trial. *Harris Bank Hinsdale, N.A. v. Caliendo*, 235 Ill. App. 3d 1013, 1025 (1992).

¶ 35        Having reviewed the 70-page affidavit and records of amounts owed submitted by U.S. Bank, we find that Oxford Nordberg's affidavit of the amounts due and owing was legally sufficient. First, Nordberg averred that he was an assistant secretary of Fay Servicing, LLC (Fay Servicing), the service agent for U.S. Bank, with authority to speak on the bank's behalf because he was a person familiar with Fay Servicing's business and its mode of operation based on his years of working as a foreclosure specialist there. Nordberg averred that, in that position, he became familiar with the way payments came into Fay Servicing and how they were then tracked and recorded, including but not limited to the software used to record the payments. Nordberg also averred that he was familiar with the way Fay Servicing maintained

mortgage loan account information, including information regarding the arrearages and the amounts due and owing on a mortgage loan account, and that he knew how to pull and read that information. If called to testify, Nordberg averred that he could competently testify as to the facts contained in the affidavit.

¶ 36    Additionally, Nordberg averred that Fay Servicing acquired the servicing rights to the loan on August 10, 2021, and at the time of transfer, the loan status was delinquent. For service transferred loans, Nordberg averred that it was the policy of Fay Servicing to integrate the business records of any prior servicers into its business records and maintain the integrated records in the ordinary and normal course of its business. With respect to defendants' loan, Nordberg averred that he reviewed and was familiar with the records generated and maintained by Fay Servicing, which were kept in the ordinary and normal course of business, as well as the business records and documents of the prior servicer, which were integrated into Fay Servicing's records and relied upon in the ordinary and normal course of business.

¶ 37    With respect to the amount due, Nordberg averred that the amount due was based on his review of all documents received within the normal daily servicing of the loan, and a true and accurate copy of the payment history and any other document he reviewed was attached to the affidavit. Nordberg further averred that the Fay Servicing used MSP/Director Premier to automatically record and track mortgage payments and that this type of tracking and accounting program is recognized as standard in the industry. Nordberg also detailed the procedure used to process and apply the payment and to create the records that he reviewed. Nordberg averred that the records are made in the regular course of Fay Servicing's business, the entries reflecting defendants' payments were made in accordance with the procedure detailed in the affidavit, the entries were made at or near the time that the payment was

received, MSP/Director Premier accurately records mortgage payments when properly operated, and MSP/Director Premier was properly operated to accurately record defendants' mortgage payments.

¶ 38   Based on the foregoing averments, Nordberg concluded that defendants failed to pay amounts due under the note, and the amount due and owing as of July 19, 2023, was:

| | |
|---|---|
| Principal | $108, 008.83 |
| Interest | $98,020.28 |
| *Pro Rata* MIP/PMI | $0.00 |
| Escrow Advance | $59,992.04 |
| Late Charges | $0.00 |
| NSF Charges | $0.00 |
| Prior Attorney fees and costs | $8,159.00 |
| Prior servicer/Property inspections | $942.50 |
| Prior servicer/BPO | $118.50 |
| Prior servicer/Taxes Forced placed | $51,394.04 |
| Property Maintenance | $0.00 |
| Property Inspections | $410.00 |
| BPO | $0.00 |
| GROSS AMOUNT DUE | $327,045.19 |
| Less/Plus balance in reserve accounts | $0.00 |
| NET AMOUNT DUE | $327,045.19 |

Interest continued to accrue on the loan in the amount of $35.37 per day.

¶ 39 In their response to the motion for summary judgment, defendants contended only that a December 2013 payment was not credited to their account and was not reflected in the records attached to the summary judgment motion. However, we note that the foreclosure complaint alleged that defendants failed to make their regular monthly mortgage payment due July 22, 2014, and the monthly payments due and accruing thereafter. Thus, any payment that defendants may have made in December 2013 is not at issue in this case.

¶ 40 When we consider all of the statements that Nordberg made in his affidavit that pertained to his personal knowledge, we are convinced that Nordberg's personal knowledge to make the remaining statements in his affidavit as to the amounts due and owing was adequately established. See Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013); *Avdic*, 2014 IL App (1st) 121759, ¶¶ 21-25.

¶ 41 Although defendants acknowledge that this court has repeatedly found affidavits with less detail than Nordberg's affidavit to be legally sufficient, they nevertheless argue that our prior decisions should be reversed. We decline to do so as we agree with our previous decisions.

¶ 42 Because we have found that Nordberg's affidavit satisfied all of the applicable legal requirements, we conclude that it was properly considered by the circuit court in support of U.S. Bank's motion for summary judgment. Furthermore, because defendants did not present any counter affidavits in the summary judgment proceeding, we find that there was no genuine issue of material fact as to the default or as to the amounts due and owing.

¶ 43                          B. Denial of Emergency Motion to Stay Sale

¶ 44 Next, defendants contend that the circuit court abused its discretion in denying their emergency motion to stay the sale and granting U.S. Bank's motion to approve the report of

sale and distribution where U.S. Bank failed to demonstrate that it had the proper standing to sue.

¶ 45    The standard of review of the circuit court's approval of a judicial sale is an abuse of discretion. *CitiMortgage, Inc. v. Lewis*, 2014 IL App (1st) 131272, ¶ 31. A circuit court abuses its discretion when its ruling rests on an error of law or where no reasonable person would take the view adopted by the circuit court. *Id.*

¶ 46    A judicial foreclosure sale is not complete until it has been approved by the circuit court. *CitiMortgage, Inc. v. Bermudez*, 2014 IL App (1st) 122824, ¶ 59. The highest bid received at a judicial sale is merely an irrevocable offer to purchase the subject property, the acceptance of which occurs when the court confirms the sale. *Citicorp Savings of Illinois v. First Chicago Trust Co. of Illinois*, 269 Ill. App. 3d 293, 300 (1995). Typically, section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b) (West 2022)) governs the circuit court's analysis in approving or disapproving a sale and is the only means by which a defendant can set aside a sale. *Bermudez*, 2014 IL App (1st) 122824, ¶ 59. Under that section, the circuit court shall confirm the sale unless it finds that (i) a notice required in accordance with subsection (c) of section 15-1507 was not given, (ii) the terms of the sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done. 735 ILCS 5/15-1508(b) (West 2022). As noted by our supreme court, section 15-1508(b) imposes a mandatory obligation on a court to conduct a hearing on confirmation of a judicial sale where a motion to confirm has been filed and notice given, and following the hearing, to confirm the sale unless it finds that any of the four specified exceptions are present. *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008). The burden is on the party opposing confirmation to prove that sufficient

grounds exist to disapprove the sale. *TCF National Bank v. Richards*, 2016 IL App (1st) 152083, ¶ 48; *Deutsche Bank National Trust Co. v. Iordanov*, 2016 IL App (1st) 152656, ¶ 31.

¶ 47    Here, defendants' contend that the circuit court erred in denying their emergency motion and confirming the judicial sale of the property because U.S. Bank lacked standing. Specifically, they contend that the identity of the proper party plaintiff is at issue, along with whether a purported prior transfer of the beneficial interest in the loan was from a party with the ability to do same, and whether U.S. Bank demonstrated that it had standing during the relevant pendency of the action. We disagree.

¶ 48    The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit and assures that issues are raised only by those parties with a real interest in the outcome of the controversy. *Deutsche Bank*, 2016 IL App (1st) 152656, ¶ 34. A party's standing to sue must be determined at the time the suit is filed. *Id.* An action to foreclose on a mortgage may be filed by a mortgagee or by an agent or successor of a mortgagee. *Id.* The attachment of a copy of the note to a foreclosure complaint is *prima facie* evidence that the plaintiff owns the note. *Id.* Our supreme court has stated that " 'lack of standing in a civil case is an affirmative defense, which will be waived if not raised in a timely fashion in the trial court.' " *Id.* (quoting *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 508 (1988)). Thus, a defendant in a foreclosure action must assert the affirmative defense of a lack of standing in his or her answer or else it is waived. *Id.* As an affirmative defense, the lack of standing is the defendant's burden to plead and prove. *Id.*; *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 24.

¶ 49    Here, defendants challenged U.S. Bank's standing to bring the foreclosure action after the circuit had already granted the bank's motion for summary judgment and judgment for

foreclosure and sale, and as such, was untimely. It was not until the notice of sale was issued and the sale was scheduled that defendants first raised the issue of standing, although they had raised several adjacent issues during the nine years of litigation. Neither defendant raised the issue of standing in their answer and affirmative defenses to the foreclosure complaint, despite two amendments. Nor was the issue of standing raised in any of their responses to U.S. Bank's motions for summary judgment or their own countermotions for summary judgment.

¶ 50      While defendants attempt to argue that it was unclear which Beneficial entity owned the mortgage, the record disproves their contention. In their various pleadings before the circuit court, defendants indicated that they refinanced their two prior mortgages into a single consolidated loan with Beneficial I in 2001. As noted above, Beneficial I became Beneficial II in 2009 due to a merger, and a copy of those documents is part of the record on appeal. That merger took place six years prior to the filing of the foreclosure action. Further, the record indicates that the loan was assigned to U.S. Bank during the pendency of this litigation in 2016, just one year after litigation commenced. Beneficial II filed a motion in the circuit court to substitute U.S. Bank as plaintiff, and the circuit court granted the motion. The record does not indicate that defendants contested the substitution of U.S. Bank as the plaintiff.

¶ 51      Moreover, if the true ownership of the mortgage was in question, as defendants argue on appeal, it would seem that raising this argument would have been paramount to their defense of the foreclosure action and should have and could have been raised prior to an emergency motion to stay the sale, as such information was available to defendants throughout the nine-year proceedings. As this court has previously found, while it is in the public interest to prevent lenders from filing foreclosure actions before the note is assigned to them, it is also in the public interest to prevent defendants in mortgage foreclosure actions, who have consistently

defaulted on their mortgage payments, from raising a standing defense so late in the case in an attempt to evade their financial commitments. *Nationwide Advantage*, 2012 IL App (1st) 112755, ¶ 32.

¶ 52 Even assuming for the sake of argument that defendants did not waive the affirmative defense, it was their burden to plead and prove that Beneficial II lacked standing at the time the complaint was filed. *Deutsche Bank*, 2016 IL App (1st) 152656, ¶ 41. Defendants have simply proffered no evidence to overcome the *prima facie* evidence that U.S. Bank, by virtue of the assignment by Beneficial II, was the owner of the note that was attached to the foreclosure complaint. See *Korzen*, 2013 IL App (1st) 130380, ¶ 24.

¶ 53 We find defendants' arguments unpersuasive and that they do not support a departure of the established caselaw of this State. We therefore conclude that, because defendants failed to raise the issue of standing until after the foreclosure judgment had been entered, defendants have forfeited this argument. This holding is consistent with established precedential caselaw. See *Greer*, 122 Ill. 2d at 508-09; *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 6-7 (2010); *Nationwide Advantage*, 2012 IL App (1st) 112755, ¶ 34; *Avdic*, 2014 IL App (1st) 121759, ¶ 13; *Deutsche Bank*, 2016 IL App (1st) 152656, ¶ 40.

¶ 54                                            CONCLUSION

¶ 55 In conclusion, we find defendants' challenges to U.S. Bank's affidavit of amounts due and owing and its standing are without merit. For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 56 Affirmed.

*U.S. Bank Trust, N.A. v. Winston*, 2025 IL App (1st) 241237

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-CH-12098; the Hon. Marian E. Perkins, Judge, presiding. |
| **Attorneys for Appellant:** | Omar F. Uddin, of Anderson & Uddin, P.C., of Aurora, for appellants. |
| **Attorneys for Appellee:** | Penny A. Eilers, of Heavner, Beyers & Mihlar, LLC, of Decatur, and Marc S. Lipinski, of Donnelly & Harris, LLC, of Chicago, for appellee. |